[Civ. No. 26909. Fourth Dist., Div. One. Mar. 23, 1984.]

MARGARET EARLEY MANGUSO, Plaintiff and Appellant, v.
OCEANSIDE UNIFIED SCHOOL DISTRICT et al.,
Defendants and Respondents.

**COUNSEL**

Steven W. Brown and Catherine R. Stine for Plaintiff and Appellant.

Higgs, Fletcher & Mack, Dennis P. Hickman and Michael L. Ward for Defendants and Respondents.

OPINION

**WORK, J.**—Margaret Earley Manguso, a former school teacher, appeals a judgment in favor of Oceanside Unified School District and a former administrator, Ben Fugate, in a libel action in which the trial court erred by refusing to allow her former students to testify, by refusing to instruct the jury on libel per se, and in instructing the jurors to use an unduly restrictive standard of "actual malice."

This case showcases the legal pitfalls facing a trial court in a defamation action when attempting to determine the appropriate standard of misconduct sufficient to establish liability by overcoming a statutory defense of qualified privilege under Civil Code section 47, subdivision 3, and the degree of fault so as to permit recovery of punitive damages under varying factual circumstances. (Contrast Civ. Code, §§ 3294, subd. (c)(1) and 48a.) The potential for applying the incorrect level of misconduct is enhanced because the different standards have all been historically identified by a common term, "malice."

Further, compounding the danger for confusion is that the misconduct necessary to establish liability in defamation actions involving public officials and for public figures requires a higher level of misconduct, labeled "actual malice," in order to overcome the First Amendment constitutional privilege recognized and defined in *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 279-280 [11 L.Ed.2d 686, 706-707, 84 S.Ct. 710, 95 A.L.R.2d 1412]. At the same time, California courts are presented with a more restrictive statutory definition of "actual malice" in Civil Code section 48a which applies only where the defamation is published by a newspaper or radio broadcast, and only to the issue of punitive damages, and regardless of whether the person defamed is a private, rather than public, figure.

In this libel action brought by a private individual, not involving the news media, the trial court erroneously instructed the jury Manguso could not overcome defendants' defense of qualified privilege unless she proved they acted with "actual malice," as defined in section 48a. As we discuss below, this erroneous instruction imposed a significantly greater burden upon Manguso to overcome the qualified privilege under section 47, subdivision 3, than the law requires. The difficulty in recognizing the differences in contextual applications of these various types of "malice" is exemplified here where neither the trial court, nor the litigants, recognized these material distinctions.

These errors do not require we reverse the judgment only because, as a matter of law, Manguso's evidence does not support the necessary finding

of malice, even as correctly defined, required to offset the applicable qualified privilege and establish liability.

## Background

Manguso received her formal education in Montana, obtaining employment with the Oceanside District where Fugate was the superintendent of schools in 1954. Fugate interviewed Manguso and she began teaching at Ditmar Elementary School. Her principal was a Mr. Gardiner.

Manguso taught at Ditmar from September 1954 to June 1956 and was offered a contract for a third year. Instead, she chose to teach at a military school in Morocco. Manguso taught for a year in Morocco and received an excellent written evaluation of her performance. Upon her return, there were no positions available at the Oceanside District and she taught the following year at the Fallbrook School District.

At Fallbrook, Manguso's principal prepared a written evaluation of her teaching performance with which she disagreed. As entitled, she wrote a "response" to that evaluation and requested a grievance hearing before the Fallbrook School Board. Before the hearing, Fallbrook Superintendent of Schools William Frazier told her she should not seek a hearing. Frazier then contacted Manguso's previous superintendent, Fugate, to help dissuade Manguso.

Fugate met with Manguso and stated, "it will be worse for your career if you have the hearing." Manguso disregarded Fugate's advice and, after the board hearing, her evaluation was revised.

After her year in Fallbrook, Manguso took a year off, married and had a child. Returning to her career, she taught for the Encinitas School District in 1959-1960, turned down a contract offer for a second year and obtained a teaching position in Campo, California, where her husband was teaching.

Before leaving for Campo, it occurred to Manguso her "file" had not been updated since she first arrived in California.[1] Manguso contacted Fugate and asked him to prepare and forward to Montana a letter covering her two years of teaching at Ditmar, along with a copy of her Air Force evaluation from Morocco.

---

[1] A confidential master file of any teacher's employment history, including evaluations, is maintained by the university where a teacher received his or her education degree. Prospective employers routinely request copies of this central file to assist them in hiring decisions.

Manguso taught at Campo without incident for two years, returning to Oceanside in 1962 because her husband had accepted a teaching job with that district. She did not teach or seek employment for the 1962-1963 school year.

In 1963, Manguso again began seeking a full-time teaching position at school districts in the area. Although she received short-term assignments as a substitute teacher at schools and districts in north San Diego County, no regular employment was offered. She unsuccessfully applied at Oceanside, Carlsbad, Vista and other districts in 1964-1965, and years following.

In 1976, Manguso obtained a copy of her confidential file from the University of Montana. It contained, inter alia, a letter from Fugate prepared and sent shortly after their meeting in the summer of 1960, containing the following statements: "Margaret Earley Manguso taught in the schools of this district from September, 1954, to June, 1956. We believe in her early experiences she was a better than average teacher. She seemed to be rather cold and distant; however, during her last year here she suffered from headaches, spells of depression, and other nervous symptoms which necessitated her absence from the classroom for varying intervals. She is thoroughly groomed in fundamentals of teaching; she knows how to teach well; she has a good knowledge of subject matter at the middle grade level; she maintains a relatively neat and orderly classroom. Her peer relationships have been only fair. Since leaving this district, she taught in a neighboring community where she was a great source of difficulty. Details on this matter can be secured from William Frazier, Fallbrook Union School District, Fallbrook, California. Her recommendation with the Winnett Schools, Winnett, Montana, bears this comment, 'outside of school attitude not good while here. Recent reports are good.' This was dated July 24, 1954. Mrs. Manguso has married since her earlier unhappy experiences and perhaps by this time is raising a family. In any case, her marital status may have given her some of the security she seemed to lack and she might be a real find for someone who needs a good primary or middle grades teacher." Manguso later found Fugate's letter in the District's files. Manguso sued for libel.

At trial, Manguso sought to introduce testimony of two of her former students, to prove the derogatory allegations in Fugate's letter were false. The trial court refused to allow these witnesses to testify,[2] asking: "How

---

[2]Plaintiff's counsel told the trial court the first former student would testify Manguso was an enthusiastic teacher, who was never depressed, who never suffered from nervous tension, and would describe her teaching activities in general. The trial court stated: "I think it is too remote, the probative value is next to nothing." There is no basis in this record to support those comments. The trial court refused even to allow counsel to make an offer of proof in support of his second witness. We therefore presume that testimony was both relevant and admissible.

would some third-grader remember, or know, 26 years ago if the teacher had a headache?" The trial court stated: "I think it is too remote, the probative value is next to nothing; it should be excluded."

The trial court refused instructions requested by Manguso defining libel per se, and explaining the general damages to which Manguso would be entitled if the jury found she was the victim of a libel per se.

The trial court did instruct on libel per quod: "A statement about the Plaintiff which does not appear false and damaging without an understanding of special facts or circumstances surrounding the publication which make its meaning clear is not a libel on its face. *Plaintiff is not entitled to recover damages for such a statement unless she proves that she has suffered specific damage as a result of the statement. Such a statement is called a libel per quod.*"

Although the jury was instructed Manguso would have to prove "specific damage" to recover for a libel per quod, the trial court refused her request to tell the jury that specific damages included injuries to her profession or occupation. No instruction defining "specific damage" was given.

*Discussion*

THE TRIAL COURT'S INSTRUCTION ON ACTUAL MALICE TO DEFEAT THE QUALIFIED PRIVILEGE OF CIVIL CODE SECTION 47, SUBDIVISION 3, WAS INCORRECT

■ Because the letter containing the alleged defamation was written by an educator, regarding qualifications of a particular teacher and directed to those prospective employers of that teacher, it is subject to a qualified privilege. (Civ. Code, § 47, subd. 3.)[3] As such, even if it is defamatory it is not libelous[4] unless Manguso shows by a preponderance of the evidence Fugate acted with malice, that is, that he acted with hatred or ill will toward Manguso, *or* he lacked reasonable grounds for believing the truth of the false statements *or* he made the statement for a reason other than to protect

---

[3]"A privileged publication or broadcast is one made—[¶] 3. In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information.

[4]Libel is defined as "false and unprivileged" communication. (Civ. Code, § 45.)

the interest of the one for whom the protection is given.[5] (*Brewer* v. *Second Baptist Church* (1948) 32 Cal.2d 791, 797 [197 P.2d 713]; *Earp* v. *Nobmann* (1981) 122 Cal.App.3d 270, 285 [175 Cal.Rptr. 767].)

■ At defendants' request, and without objection by Manguso, the trial court erroneously instructed the jurors on the less liberal standard of "actual malice" contained in Civil Code section 48a, subdivision 4(d), i.e., that Manguso must prove the defendants acted both out of hatred or ill will *and* without a good faith belief in the truth of the publication at the time the letter was written. However, this special and more limited definition of "actual malice" is a special statutory shield available only to insulate defamations spread by newspapers engaged in publishing "hot news" and slanders by radio broadcasts from attack.

Civil Code section 48a gives special statutory protections to newspapers primarily engaged in disseminating information to its readership while the information is still "fresh." Thus, one is barred from collecting compensatory or punitive damages against a covered news media unless the person allegedly defamed promptly and specifically requests retraction or, after such request, the media does not comply. The section goes on to provide that in any event, in order for plaintiff to recover exemplary damages it is necessary to prove the defendant made the publication or broadcast with "actual malice," and that "actual malice," may not be inferred or presumed from the publication or broadcast.[6]

When the trial court here instructed the jury it could not find malice unless it found the defendants "acted out of hatred or ill will toward the plaintiff, *and* did not have a good faith belief in the truth of the publication at the time the letter was written," it prevented the jurors from finding for Manguso by her showing the letter writer acted *either* out of hatred or ill will toward her *or* without a good faith belief in the truth of its contents.

■ Although there appears to have been no objection by Manguso to the erroneous definition of malice contained in the instructions presented by defendants and given by the trial court, where the instruction is erroneous on material elements of the law, the giving of the instruction is deemed

---

[5]An even less stringent definition of malice was used in the case of *Cunningham* v. *Simpson* (1969) 1 Cal.3d 301, 308 [81 Cal.Rptr. 855, 461 P.2d 39]. There, the jury was instructed that it was only necessary to show the defendant may have been motivated by a "wish to vex, annoy or injure" the plaintiff, in order to defeat the conditional privilege under section 47, subdivision 3. The Supreme Court did not approve this standard, but merely noted this was the definition of malice given to the jury at defendant's request. (*Id.*, at p. 308, fn. 7.)

[6]For a discussion of the specific and limited scope of Civil Code section 48a, see *Burnette* v. *National Enquirer, Inc.* (1983) 144 Cal.App.3d 991, 1000-1004 [193 Cal.Rptr. 206].

excepted to, even in the absence of objection. (*Pappert* v. *San Diego Gas & Electric Co.* (1982) 137 Cal.App.3d 205, 212 [186 Cal.Rptr. 847].)[7]

## The Trial Court Failed to Properly Evaluate the Admissibility of the Former Students' Testimony

■ The trial court first based its ruling excluding the former students' testimony on remoteness. The events to which the former students were to testify occurred during the very time period in issue, the time when Fugate alleged she was cold and distant, and absent for varying intervals from the classroom due to headaches and apparent nervous disorders. Such evidence was not remote from the issues of the case.

We presume the trial court did not disallow the testimony of the former students solely because of the lapse of time between the events in question and the time of trial, for other witnesses were permitted to testify regarding the same events. Thus, it appears the court's ruling was based only on its subjective feeling the former students were not competent to testify because they were children at the time of these events and would not clearly recall the material facts. Although an inquiry might have established incompetency as a matter of fact, the trial court had no authority to exclude the offered testimony based on its subjective assumption all persons cannot recall childhood events. (Evid. Code, § 700 provides: "Except as otherwise provided by statute, every person is qualified to be a witness and no person is disqualified to testify to any matter.")[8]

It is suggested the trial court ruling might have been based on section 352, as cumulative of testimony already given by Manguso herself. If so, it was an abuse of discretion. Section 351 concisely states the cardinal rule of evidence: "Except as otherwise provided by statute, all relevant evidence is admissible." The testimony of Manguso's former students, if competent, was not only relevant to the truth or falsity of charges contained in Fugate's letter, but was likely the very best evidence on this issue. It is thus inconceivable its probative value could have been outweighed by the consumption of time it would have taken for the witnesses to testify.[9] (Cf. § 352.)

---

[7]The confusion over the proper definition of malice in the context of this case is understandable. The confusion in the courts generally and in treatises related to slander and libel has generated much comment. (See *Burnette* v. *National Enquirer, Inc., supra,* 144 Cal.App.3d 991, 1006, fn. 7.)

[8]All statutory references are to the Evidence Code.

[9]When told the testimony of the first witness was to take only 10 minutes, the trial court stated that even 10 minutes was too long.

## THE TRIAL COURT ERRED BY REFUSING TO INSTRUCT ON LIBEL PER SE

As applicable here, libel is a false, *unprivileged* communication which tends to injure Manguso in her profession. (Civ. Code, § 45.) If the defamation is defamatory without explanatory matter, it is libel per se and actionable even though Manguso cannot prove she lost any jobs or money as a result of the libel. (Civ. Code, § 45a.) Thus, even in the absence of showing she lost employment, Manguso could recover punitive and/or general damages.

 The trial court stated no reasons for refusing Manguso's instruction on libel per se. Here, where the evidence of a causal relationship to any lost employment is very weak, the instruction would have told the jurors Manguso did not have to show any special damage to recover where the defamation is plain on the face of the letter. Further, the defamation is clear on the face of the letter from allegations directly imputing Manguso's lack of qualifications for a permanent teaching position.

The defendants objected to the per se instruction, arguing explanatory matter would be required before the average reader would draw a defamatory interpretation. However, this letter was written for school administrators, by a school administrator, in terms specifically designed to convey adverse comments about Manguso's teaching abilities. Whatever ambiguity a lay person might find in these remarks, they have a plain, professionally derogatory meaning to educators.

## THERE IS NO SUBSTANTIAL EVIDENCE OF MALICE

 In reviewing the record in light of the standard expressed in *Brewer v. Second Baptist Church, supra,* 32 Cal.2d 791, it is evident that Manguso presented no substantial evidence Fugate and/or the district acted either with hatred or ill will, or without a reasonable belief the objectionable comments were true, or with any improper intent. Thus, we hold, as a matter of law, the qualified privilege of Civil Code section 47, subdivision 3 barring liability was not overcome.

Superintendent Fugate testified his impressions of Manguso's teaching performance during her second year at Oceanside were primarily gained in the course of routine communications to him from her immediate principal. His superintendent duties did not entail personal supervision and observation of the teachers except for a few minutes once or twice a year. Thus, it is uncontradicted from the evidence that the offending observations placed in the letter expressed Fugate's opinion based upon these communications.

There simply is no evidence from which it may reasonably be inferred Fugate lacked a reasonable belief in the truth of these allegations.

On the question of whether there was hatred or ill will, Manguso points only to her 1958 discussion when Fugate spoke to her at the request of an administrator of the neighboring Fallbrook School District to attempt to dissuade her from going to that school district's board to force a change in a derogatory evaluation. Fugate admits he attempted to convince Manguso not to try to override the report because of his concern it could affect her employability in the future. Manguso's sole theory at trial on this issue, is that Fugate wrote the offending letter some years later because he was piqued she rejected his advice, and his conduct in filling the letter with allegedly false and defamatory information was directly responsive to his "threat" that failure to follow his advice would be bad for her. However, Fugate specifically stated he never knew whether Manguso took his advice, and there is no evidence to the contrary. Such a finding cannot be inferred from Fugate's status of superintendent because his position did not relate to affairs of the Fallbrook School District.

Manguso asked the jurors to find hatred or ill will by interpreting his cautionary comments to her as inferring he would take actions against her if she failed to follow his advice. Since there is no evidence he was ever aware she did not accept his counsel, there is no premise from which this inference may be logically drawn. Thus, no evidence supports any finding of malice to overcome the privilege of this communication. Thus, by definition, it is not a libel. (Civ. Code, § 45.)

Judgment affirmed.

Wiener, Acting P. J., and Butler, J., concurred.