[Civ. No. 22896. Fourth Dist., Div. One. July 21, 1981.]

STERLING TRANSIT COMPANY, INC., Plaintiff and Appellant, v.
FAIR EMPLOYMENT PRACTICE COMMISSION, Defendant and
Respondent;
JOSE BUSTAMANTE, Real Party in Interest and Respondent.

COUNSEL

Nissenberg & Nissenberg and David N. Nissenberg for Plaintiff and Appellant.

George Deukmejian, Attorney General, Arthur C. de Goede, Assistant Attorney General, Edmond B. Mamer and Richard W. Bakke, Deputy Attorneys General, for Defendant and Respondent.

No appearance for Real Party in Interest and Respondent.

## Opinion

**WORK, J.**—Sterling Transit Company, Inc., appeals the denial of its writ of mandamus seeking to reverse the California Fair Employment Practice Commission's (Commission) decision finding its hiring practices unlawfully discriminate against persons having back physical handicaps. Sterling claims the court erred by finding substantial evidence supports the Commission finding it failed to prove its employment standards were based on bona fide occupational qualifications (BFOQ defense) and were necessary to prevent the potential employee from endangering his health (safety defense).

There is no factual dispute. Jose Bustamante was denied permanent truck driving employment by Sterling after performing as temporary help in the identical capacity the preceding 19-month period. He performed so satisfactorily he was offered permanent employment in that position. A preemployment physical revealed his low-back congenital problem (scoliosis), thus, probably to Bustamante's surprise, he is a handicapped person. Because of Sterling's absolute rule against hiring persons with back deficiencies, *even those not presently disabling*, Bustamante was discharged. Sterling handled this employment situation in exactly the same manner for all persons with similar back conditions. However, Sterling admits the action would be discriminatory and prohibited by the California Fair Employment Practice Act (FEPA), unless otherwise excused. (Lab. Code, § 1420, subd. (a), now Gov. Code, § 12940.)[1]

■ Every person's civil right to obtain and hold employment without discrimination or abridgment on account of a physical handicap is guaranteed under the public policy of this state. (§§ 12920, 12921, formerly Lab. Code, §§ 1411, 1412.)

To insure adherence to this principle the Legislature has designed a structure to implement, monitor and carry out enforcement policies under the administration of the Department of Fair Employment and Housing (and Commission).

---

[1]"It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification ... [¶] (a) For an employer, because of race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, or sex of any person, to refuse to hire or employ ... or to refuse to select [that person] for a training program leading to employment, or to bar or to discharge such person from employment ...."

All references are to the Government Code unless otherwise specified.

Complaints are processed through hearings (§ 12967) followed by issuance of findings and of published opinions which serve as precedent to interpret and apply the law to claims under section 12940. (§ 12935.)

Bustamante's accusation to the Commission alleged his termination and refusal of reemployment was a prohibited discrimination based on his physical handicap. The administrative law judge to whom the accusation was assigned recommended, after hearing, a ruling in Sterling's favor, finding the discrimination justified because:

(1) Bustamante's physical condition exposed him to a greater risk of injury due to the physical rigors inherent in his employment (the safety defense). The judge also speculated Bustamante's employment might expose the public to a slightly greater risk of injury because a painful back injury during the course of employment could make him less able to safely operate his truck (§ 12940, subd. (a)(1)); and (2) Sterling's employment limitation was a bona fide occupational qualification (the BFOQ defense). (§ 12940.)

In spite of these recommended findings the Commission held Bustamante had made a prima facie case of discrimination, after which Sterling failed to carry its burden on either defense: the BFOQ defense because the record did not show its automatic exclusion rule was reasonably necessary to the "essence of its business" and that "all, or substantially all," persons with similar back conditions would be unable to perform the truck driver duties safely and efficiently (the *Weeks* test);[2] the "safety" defense because the evidence showed any potential danger to Bustamante's health was not substantial or immediate.

The trial court rejected Sterling's contention the Commission ruling need be subjected to independent judgment scrutiny and, instead, applied the substantial evidence test approved for employer appeals in *Northern Inyo Hosp.* v. *Fair Emp. Practice Com.* (1974) 38 Cal.App. 3d 14 [112 Cal.Rptr. 872]. ▮ There is no attack in this appeal to the standard used, and we are limited to reviewing the trial court's decision in the same manner. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 149 [93 Cal.Rptr. 234, 481 P.2d 242].) Thus, we are bound to uphold the lower court's ruling where it is based upon a reasonable evidentiary finding, even in the face of equally, or even more persuasive, competent evidence.

---

[2] *Weeks* v. *Southern Bell Telephone & Telegraph Company* (5th Cir. 1969) 408 F.2d 228 [12 A.L.R.Fed. 1].

## Background

As a portion of the 1964 Civil Rights Act (42 U.S.C. § 2000e et seq.) Congress has prohibited hiring practices which unlawfully discriminate against certain classes of individuals. A majority of the states have adopted similar legislation. California's act is similar in scope to the federal law regarding acts made unlawful and the defenses available to employers who seek to justify refusals to hire or retain persons within a protected class, however, California has designated groups in addition to those covered by the federal law. One includes those who, like Bustamante, are physically handicapped.

## BFOQ Defense

In defining the boundaries of the BFOQ defense, Commission drew on the interpretation applied to the federal statute in *Weeks* v. *Southern Bell Telephone & Telegraph Company, supra*, 408 F.2d 228. Sterling claims this is improper because the Civil Rights Act does not prohibit employment discrimination against the physically handicapped[3] and, therefore, the interpretation in *Weeks* (a sex discrimination matter) was not designed for a physically handicapped situation. Further, it contends the standard is unworkable in this setting and California should adopt a less stringent formula allowing it to automatically reject all persons with *any* back problem without individually determining if the handicap would impair his or her ability to perform the job duties.

■ The BFOQ defense relates to whether handicapped persons are unable to *presently* safely and efficiently perform the job duties. If the employer carries his burden of proof all persons within an otherwise protected class may be excluded from employment without inquiry as to whether certain members of the class may, in fact, be capable of safe and efficient job performance.

Because of the strong public policy in favor of employing the handicapped, the Commission has adopted a rule of liberal construction (now enacted in Cal. Admin. Code, tit. 2, § 7285.1, subd. (a)) to effectuate the

---

[3]Discrimination against the physically handicapped in the area of government contractors and grant holders is prohibited by the language of 29 United States Code sections 793, 794. However, there is no express BFOQ exception set out in that legislation.

statutory purpose. In view of the severe ramifications of cutting off an entire group of persons from an area of employment based solely on class characteristics, we feel the Legislature intended the Commission to favor the handicapped and narrowly construe the BFOQ defense. To this end we believe it is inconsistent with the public policy against discrimination to allow an employer to exclude a handicapped person on the basis of class alone, unless it is proved all, or substantially all, persons in that class are unable to perform the job duties safely and efficiently.[4] Sterling submitted no evidence to support such a finding.

· Sterling complains its failure to introduce evidence to satisfy this test was because it was not aware such a burden would be imposed, however, the record shows no reasonable possibility Sterling could meet the burden in any event.

Sterling points out *Weeks* hypothesized an employer might sustain the burden without showing "all or substantially all" class members would be unable to safely and efficiently perform the job duties by showing the impossibility or impracticality of dealing with them on an individualized basis, thus allowing it to apply a reasonable general rule (*Weeks* v. *Southern Bell Telephone & Telegraph Company, supra*, 408 F.2d 228, 235, fn. 5). The court in *Harriss* v. *Pan Am. World Airways, Inc.* (N.D.Cal. 1977) 437 F.Supp. 413, 435, found such a demonstration. However, *Harriss* involved safety regulations designed to safeguard passengers transported by common carrier and stressed the employer's showing of the increased likelihood of harm to its passengers, and its potential severity, in the absence of its safety policies. Further, a lesser showing is required to justify employment discrimination by common carriers. (*Usery* v. *Tamiami Trail Tours, Inc.* (5th Cir. 1976) 531 F.2d 224; *Hodgson* v. *Greyhound Lines, Inc.* (7th Cir. 1974) 499 F.2d 859, cert. den. *sub nom., Brennan* v. *Greyhound Lines, Inc.,* 419 U.S. 1122 [42 L.Ed.2d 822, 95 S.Ct. 805]; *Boynton Cab Co.* v. *Dept. of Industry, Labor and Human Relations* (Wis.Sup.Ct. 1980) 23 Emp.Prac.Dec. (CCH) ¶ 30,925.)

Sterling's evidence does not support extending the lesser alternative standard to other than common carriers.

---

[4]This standard has now been enacted into a regulation by enactment of California Administrative Code, title 2, section 7286.7 subdivision (a).

## The "Safety" Defense

■ An employer may refuse to hire persons whose physical handicap prevents them from performing their duties in a manner which does not endanger their health.[5] (§ 12940, subd. (a)(1).)

Unlike the BFOQ defense, this exception must be tailored to the individual characteristics of each applicant (*Rosenfeld* v. *Southern Pacific Company* (9th Cir. 1971) 444 F.2d 1219, 1225) in relation to specific, legitimate job requirements. In this regard the evidence is clear, and ample: Bustamante has a low back scoliosis,[6] a condition which makes him more susceptible to back injury than persons not so afflicted. The rigors of the truck driver position to which Bustamante aspired are evidenced by Sterling's job description which calls for constant lifting, bending, stooping, lifting up to 100 pounds with an average pounds per man-hour of lifting being 1,708.7 or 13,685.6 per day. In fact, Bustamante states he was required to lift more than 125 pounds on numerous occasions per day and often a full 40,000 pound truck load per day. He stated his average carry was 100-125 pounds during the loading and unloading of trucks.

On the other hand, the evidence shows Bustamante regularly performed equivalent duties for 10 years, held the identical job for 19 months, and is currently so employed by a company having full awareness of his back condition. He has had no job-related back problems. His physician, Dr. Dabbert, determined he was not restricted in any way by the back condition and, in the absence of "new events" was not likely to suffer any "major" disability in the future.

To offset Dr. Dabbert's somewhat ambiguous report, and Bustamante's conceded present physical abilities, Sterling offered evidence of two orthopedic specialists who generally agreed a scoliosis increases the risk of back injury when a person engages in the strenuous activities required by Sterling. However, both agreed not all persons would be similarly affected, and some would not suffer injury. Neither doctor could offer statistics showing the degree to which the risk of injury increases because of a scoliosis and each admitted Bustamante might never suffer injury. In fact, Dr. Hogan stated whether the job could be

[5]The evidence in no way supports a finding of danger to other persons.

[6]X-rays also reveal some osteoarthritic spurring, but the significance of this, either singularly or in conjunction with the scoliosis, is not developed.

performed without endangering Bustamante's health depended on how careful he was and whether he stayed physically fit.

Sterling's evidence, at best, shows a *possibility* Bustamante might endanger his health sometime in the future. In the light of the strong policy for providing equal employment opportunity, such conjecture will not justify a refusal to employ a handicapped person. (*In re Personnel Department County of Santa Clara* (1978) 2 Empl.Prac. Guide (CCH) ¶ 5078.)

### Adverse Financial Impact

■ Finally, Sterling contends the Commission ruling potentially exposes it to substantial financial detriment which its rule allows it to avoid. Indeed, the evidence shows the employer faces possible liability, each time a job injury occurs, for payment of: (1) initial medical treatment, (2) full wages to the end of the current working day, (3) off-time, through workers compensation, (4) a percentage of any permanent disability, (5) rehabilitation in the event of total disability, and (6) expenses incurred in replacing the injured employee.

These substantial concerns are mirrored by employers in every jurisdiction mandating equal employment opportunity for the handicapped. We are certain our Legislature was not unmindful of this issue when it made all exclusionary hiring practices unlawful but those within the stated narrow exceptions specifically relating to job ability and safety.

The Office of Federal Contract Compliance Program and the Health, Education and Welfare Office for civil rights expressly reject insurance costs as a legal reason for refusing to hire the handicapped. (Zimmer, Employing the Handicapped (1981) p. 229.) Wisconsin, with a statutory scheme almost identical to ours, does not allow the employer's potential increased financial risk to justify discrimination, and instead suggests the issue of nondisabling handicaps being aggravated by job strains is one best addressed by the Legislature. (*Western Weighing & Inspection Bureau* v. *Wisconsin Dept. of Industry, Labor and Human Relations* (Wis.Cir.Ct. 1977) 14 Empl.Prac.Dec. (CCH) ¶ 7720.)

There is no ambiguity in the language of the act, and we are not empowered to create a financial impact exception allowing employers to prevent otherwise qualified handicapped persons from competing for employment on an equal footing with all others.

At best, Sterling's evidence shows its policy of screening out all persons having nondisabling abnormal backs decreases its risk of an undetermined future increase in the cost of doing business. While such procedures may be in an employer's economic interest in some cases, such a blanket exclusion eviscerates the legislative policy by erecting employment barriers more difficult to scale than Mount Rainier.

Substantial evidence supports judgment of the trial court. Affirmed.

Cologne, Acting P. J., and Froehlich, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 12, 1981.

---

*Assigned by the Chairperson of the Judicial Council.