[No. S137770. Aug. 23, 2007.]

DWIGHT D. GREEN, Plaintiff and Appellant, v.
STATE OF CALIFORNIA, Defendant and Appellant.

## COUNSEL

Pine & Pine, Norman Pine, Beverly Tillett Pine; Law Offices of David H. Greenberg and David H. Greenberg for Plaintiff and Appellant.

Claudia Center, Lewis Bossing and Elizabeth Kristen for Legal Aid Society-Employment Law Center, Disability Rights Advocates, Disability Rights Education and Defense Fund and The Disability Rights Legal Center as Amici Curiae on behalf of Plaintiff and Appellant.

Law Office of Jeffrey K. Winikow and Jeffrey K. Winikow for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Jacob A. Appelsmith, Assistant Attorney General, Elizabeth Hong, Vincent J. Scally, Jr., Silvia M. Diaz and Michelle Logan-Stern, Deputy Attorneys General, for Defendant and Appellant.

Paul, Hastings, Janofsky & Walker, Paul W. Cane, Jr., Katherine C. Huibonhoa and Jaime D. Byrnes for Employers Group and California Employment Law Council as Amici Curiae on behalf of Defendant and Appellant.

## OPINION

**CHIN, J.**—The Americans with Disabilities Act of 1990 (ADA; 42 U.S.C. § 12101 et seq.) requires that plaintiffs prove they are "qualified individuals" under the statute, i.e., that they have the ability to perform a job's essential duties before they can prevail in a lawsuit for discrimination. (42 U.S.C. § 12112(a).) Although the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq. (FEHA))[1] does not expressly include the term "qualified individual," the question here is whether it includes a similar requirement. In 1997, a Court of Appeal held that it does. (*Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 235 [66 Cal.Rptr.2d 830] (*Brundage*).) The Court of Appeal here held that it does not.

■ The FEHA prohibits discrimination against any person with a disability but, like the ADA, provides that the law allows the employer to discharge an employee with a physical disability when that employee is unable to perform the essential duties of the job even with reasonable accommodation. (§ 12940, subd. (a)(1); 42 U.S.C. § 12112(a).) After reviewing the statute's

---

[1] All statutory references are to the Government Code unless otherwise stated.

language, legislative intent, and well-settled law, we conclude the FEHA requires employees to prove that they are qualified individuals under the statute just as the federal ADA requires. We therefore reverse the Court of Appeal's judgment.

## I.  FACTS AND PROCEDURAL HISTORY

The facts and procedural discussion are taken largely from the Court of Appeal opinion, supplemented by the record.

Plaintiff began working for the State of California in 1974. In 1987, plaintiff worked as a stationary engineer for the Department of Corrections at the California Institute for Men in Chino (the Institute). Plaintiff's duties included maintenance and repair of equipment and mechanical systems and supervision and instruction of a crew of inmates. In 1990, plaintiff was diagnosed with hepatitis C. Plaintiff presumably contracted the disease while working on the sewer pipes at the Institute. From 1990 until 1997, plaintiff did not have any work restrictions because of the illness, nor did he lose any time from work. In addition, plaintiff was considered a good employee and received letters of commendation. George Woods, who supervised plaintiff from 1994 through 1997, stated in several letters of commendation that plaintiff was one of his best stationary engineers.

In 1997, plaintiff's physician, Dr. James Wang, began treating plaintiff with the drug interferon or Infergen (a brand of interferon). Plaintiff received Infergen injections as a treatment for hepatitis C. A single course of treatment required injections three times a week for a one-year period. The treatment caused plaintiff to feel fatigued, have trouble sleeping, and to suffer headaches and body aches.

On February 14, 1997, supervisor Woods received a letter from Dr. Wang, requesting that plaintiff be put on light duty until at least May or June of 1997. Woods accommodated plaintiff and allowed him to arrive to work late on the days he received the Infergen injections. At times, Woods assigned plaintiff to positions that did not require heavy labor. In all other respects, plaintiff continued to perform his duties.

On January 11, 1999, plaintiff was reprimanded for coming into work late on various days. Plaintiff explained to his employer that his ongoing medical condition prevented him from being punctual at times.

In June 1999, plaintiff injured his back while lifting a garbage disposal. The injury was unrelated to any side effects from the interferon treatment. Plaintiff continued working but, on the recommendation of the doctor treating

his back, was placed on light duty. Defendant had a policy that employees could be on light duty for a limited time only. Because plaintiff's back problems continued to restrict him to light duty work, in November 1999, defendant placed plaintiff on disability leave.

On July 3, 2000, plaintiff returned to work cleared for full duty, taking sick leave to attend physical therapy sessions for his back injury only. At that time, the Institute's return-to-work coordinator, Kristi Hilliker, reviewed plaintiff's file. Hilliker noticed the 1997 doctor's report the workers' compensation's qualified medical examiner (Dr. Alvin Markovitz) prepared at the time plaintiff began receiving his interferon injections. The report recommended plaintiff for light duty only. Based on this report, Hilliker concluded that plaintiff should not have been cleared for full duty work, and decided to meet with plaintiff that same day. Before the meeting could take place, however, plaintiff went to the coordinator's office complaining of fatigue due to his hepatitis, and requested to see a doctor. He met with the Institute's associate warden of business services, Sheila Tatum, and Hilliker. Plaintiff told them that he was feeling tired and wanted to see his doctor. Tatum and Hilliker told plaintiff that based on work restrictions contained in the 1997 medical report, plaintiff was incapable of performing his duties and could not return to work. They discussed various options with plaintiff, who initially decided to take disability retirement.

After the meeting, plaintiff and Hilliker communicated about plaintiff's options. Plaintiff received a letter from Hilliker dated October 2, 2000, informing him that unless he could be cleared for full duty, he could not return to his position as a stationary engineer. In November of the same year, plaintiff sought permission to return to work. Hilliker denied his request based on 1999 findings of a workers' compensation proceeding that found plaintiff had suffered a work-related injury.

Plaintiff subsequently filed a disability discrimination claim with the Department of Fair Employment and Housing. He then filed a complaint for damages in the superior court alleging that defendant discriminated against him because of his disability. Dr. Markovitz's 1997 report was not admitted into evidence, and Dr. Markovitz was not allowed to testify. The jury returned a general verdict for plaintiff, awarding him $597,088 in economic damages, and $2 million in noneconomic damages.

Defendant moved for a new trial, challenging the trial court's decision to exclude Dr. Markovitz's testimony. The trial court rejected defendant's contention, but ruled that the motion for a new trial would be granted unless plaintiff accepted a remittitur, which plaintiff did.

On appeal, defendant raised several claims, including: The jury's verdict was not supported by the evidence; a decision of the workers' compensation judge barred plaintiff's disability discrimination claim; the court abused its

discretion in excluding evidence of the subsequent Workers' Compensation Appeals Board proceeding and the testimony of Dr. Alvin Markovitz, the qualified medical examiner for the administrative proceeding; the trial court erred in failing to instruct the jury on the elements of a FEHA claim and the defenses; and the award of $2 million in noneconomic damages was excessive. Plaintiff cross-appealed, claiming that the trial court exceeded its authority in reducing the noneconomic damages and abused its discretion in denying the requested amount of attorneys fees.

The Court of Appeal affirmed the judgment in plaintiff's favor. Recognizing that trial court never instructed the jury on the element of qualification or inability to perform, the Court of Appeal held that the FEHA "does not require plaintiff to prove that he is a qualified individual. Rather, the burden is on defendant to establish that plaintiff is incapable of performing his essential duties with reasonable accommodation." We granted defendant's petition for review.

■    As we explain, we disagree with the statement of defendant's burden of proof adopted by the Court of Appeal and advocated by plaintiff here. Instead, we conclude that the Legislature has placed the burden on a plaintiff to show that he or she is a qualified individual under the FEHA (i.e., that he or she can perform the essential functions of the job with or without reasonable accommodation). As explained further below, legislative intent, case law, and legislative history support defendant's position—a view that also finds support in Evidence Code section 500, which requires a plaintiff to prove each fact essential to the claim for relief he or she is asserting.

## II.   DISCUSSION

### A.   *Statutory Analysis*

Why have the California cases, beginning with *Brundage, supra,* 57 Cal.App.4th at page 235, nearly unanimously presumed plaintiffs must prove, like their federal counterparts under the ADA, that they are qualified individuals under the FEHA in order to prevail in their lawsuits? The answer lies in the statute's plain meaning, which is clear and unambiguous.

■    Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) We must look to the statute's words and give them their usual and ordinary meaning. (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) The statute's plain meaning controls the court's interpretation unless its words are ambiguous. If the plain language of a statute is unambiguous, no court need, or should, go beyond that pure expression of legislative intent. (*Ibid.*)

We therefore begin our statutory analysis with a comparison of the ADA and the FEHA provisions at issue. We then discuss plaintiff's statutory interpretation and why we disagree with it under the premise that a statute's meaning is guided by the plain words the Legislature chose. (*Kobzoff v. Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 861 [80 Cal.Rptr.2d 803, 968 P.2d 514].)

The ADA provides: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." (42 U.S.C. § 12112(a).) In turn, the ADA defines the term "qualified individual with a disability" to mean "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." (42 U.S.C. § 12111(8).)

Federal case law interpreting the ADA is clear that an employee bears the burden of proving, among other elements, that he or she meets the definition of a "qualified individual with a disability" in order to establish a violation of the ADA. Speaking in terms of the elements for which a plaintiff bears the burden of proof at trial, the high court has explained that "[a]n ADA plaintiff bears the burden of proving that she is a 'qualified individual with a disability'—that is, a person 'who, with or without reasonable accommodation, can perform the essential functions' of her job." (*Cleveland v. Policy Management Systems Corp.* (1999) 526 U.S. 795, 806 [143 L.Ed.2d 966, 119 S.Ct. 1597]; see also *Jones v. Potter* (6th Cir. 2007) 488 F.3d 397, 403; *Browning v. Liberty Mut. Ins. Co.* (8th Cir. 1999) 178 F.3d 1043, 1047; *Waggoner v. Olin Corp.* (7th Cir. 1999) 169 F.3d 481, 484; *Laurin v. Providence Hosp.* (1st Cir. 1998) 150 F.3d 52, 56, 58–59; *Monette v. Electronic Data Systems Corp.* (6th Cir. 1996) 90 F.3d 1173, 1178, 1184, 1186 & fn. 12; *Katz v. City Metal Co., Inc.* (1st Cir. 1996) 87 F.3d 26, 30, 33; *Chandler v. City of Dallas* (5th Cir. 1993) 2 F.3d 1385, 1389–1390, 1393–1394 [Rehabilitation Act of 1973]; see also *E.E.O.C. v. Wal-Mart Stores, Inc.* (8th Cir 2007) 477 F.3d 561, 568.) This qualification element of the plaintiff's burden of proof was also found in the predecessor to the ADA, the Rehabilitation Act of 1973. Many decisions analyzing the earlier enactment are relied upon in interpreting the ADA. (See, e.g., *Monette v. Electronic Data Systems Corp., supra,* 90 F.3d at pp. 1177–1178; *Chandler v. City of Dallas, supra,* 2 F.3d at pp. 1389–1390, 1393–1394; see also *Rizzo v. Children's World Learning Centers, Inc.* (5th Cir. 1996) 84 F.3d 758, 763, affd. en banc (2000) 213 F.3d 209; *White v. York Intern. Corp.* (10th Cir. 1995) 45 F.3d 357, 360–361 & fn. 5; *Doe v. New York University* (2d Cir. 1981) 666 F.2d 761, 776–777.) The reason is clear; it is not unlawful under federal law to draw a distinction on the basis of a disability if that disability renders an employee

unqualified, with or without reasonable accommodation, to perform the essential functions of a position.

California has prohibited employment discrimination based on physical handicap since 1973. (*Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1024–1025 [130 Cal.Rptr.2d 662, 63 P.3d 220].) "In 1980, that prohibition and the definition of physical handicap to include 'impairment of sight, hearing, or speech, or impairment of physical ability' were incorporated into the newly enacted FEHA." (*Id.* at pp. 1024–1025, quoting Stats. 1980, ch. 992, § 4, pp. 3140, 3144.)

■ Like the ADA, and like its predecessor the Rehabilitation Act of 1973, today the FEHA, section 12940, subdivision (a), prohibits discrimination based on an employee's physical disability. Under the FEHA, it is unlawful "[f]or an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition . . . of any person, . . . to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." (*Ibid.*) Although section 12940 proscribes discrimination on the basis of an employee's disability, it specifically limits the reach of that proscription, excluding from coverage those persons who are not qualified, even with reasonable accommodation, to perform essential job duties: "This part does not prohibit an employer from refusing to hire or discharging an employee with a physical or mental disability . . . where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations." (§ 12940, subd. (a)(1).)

■ By its terms, section 12940 makes it clear that drawing distinctions on the basis of physical or mental disability is not forbidden discrimination *in itself*. Rather, drawing these distinctions is prohibited *only if* the adverse employment action occurs because of a disability *and* the disability would not prevent the employee from performing the essential duties of the job, at least not with reasonable accommodation. Therefore, in order to establish that a defendant employer has discriminated on the basis of disability in violation of the FEHA, the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation.

In this sense, the FEHA is strikingly similar to the ADA, which as indicated prohibits employer discrimination against any "qualified individual with a disability," i.e., discrimination against "an individual with a disability

who, with or without reasonable accommodation, can perform the essential functions of the employment position." (42 U.S.C. § 12111(8); see 42 U.S.C. § 12112(a).) This similarity between the state and federal enactments is not a coincidence, but reflects the Legislature's deliberate effort in 1992 to conform the FEHA to this ADA provision. As the legislative history discloses, the Legislature amended the FEHA in 1992 by clarifying that an employee must be able to perform the "essential duties with reasonable accommodations." (Stats. 1992, ch. 913, § 1, p. 4282.) In passing the amendment, at least one legislative analysis observed the Legislature's "conformity [to the ADA rules] will benefit employers and businesses because they will have one set of standards with which they must comply in order to be certain that they do not violate the rights of individuals with physical or mental disabilities." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1077 (1991–1992 Reg. Sess.) as amended Jan. 6, 1992, p. 4.) It is clear, then, that the Legislature incorporated the ADA requirement with full knowledge of the purpose the language serves in the ADA—as a means of distinguishing permissible employment practices from impermissible disability discrimination based on the employee's ability to perform in the particular employment position with reasonable accommodation. Thus, even if there were some conceivable ambiguity regarding the burden issue prior to that point in time, no such ambiguity existed afterward.

Requiring a plaintiff employee who seeks relief under the FEHA to shoulder the burden of producing evidence and persuading the trier of fact that the defendant employer engaged in impermissible disability discrimination against him or her as a qualified individual, as defined by the FEHA, is consistent with the general rule in California that "a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief . . . that he is asserting." (Evid. Code, § 500.) As in the typical civil action seeking relief in a California court, it is reasonable to require a plaintiff who alleges a FEHA violation as a basis for recovery to prove the elements of a claim for violation of the ADA, including by proving the element that the defendant impermissibly discriminated because the plaintiff was able to do the job with or without reasonable accommodation.

Plaintiff contends that the employer bears the burden to prove that a plaintiff employee is not qualified to sue under the FEHA, essentially asserting that the lack of qualification constitutes an affirmative defense. In support of this argument, plaintiff points to language in the FEHA stating the statutory provisions apply to *any person* making a discrimination claim. In plaintiff's view, this particular language in the FEHA differs significantly from the ADA, which omits the "any person" language and instead reflects an unambiguous intent to protect a "qualified individual" only.

The Court of Appeal agreed with plaintiff, reasoning that the statutory phrase "any person" applies to any plaintiff alleging a claim of disability discrimination under the FEHA. (§ 12940, subd. (a).) The court interpreted the FEHA's use of this phrase to mean that a plaintiff need not prove that he or she satisfies the ADA's "qualified individual" requirement, but that lack of qualification would be an affirmative defense.

■ We are not persuaded. The FEHA's use of the term "any person" in listing the various forms of prohibited discrimination does not warrant disregard of the specific language unambiguously providing that an adverse employment action on the basis of disability is *not prohibited* if the disability renders the employee unable to perform his or her essential duties, even with reasonable accommodation. When read together with section 12940, subdivision (a)(1), subdivision (a)'s reference to "any person" cannot reasonably be understood to specially alter the ordinary burden of proof set forth in Evidence Code section 500. Had the Legislature actually intended to relieve a plaintiff employee of the burden of proving an actionable discrimination on the basis of disability, thereby departing significantly from federal law, we believe it could and would have done so in a more conspicuous manner.

Contrary to plaintiff's contention and the Court of Appeal's position, the FEHA and the ADA both limit their protective scope to those employees with a disability who can perform the essential duties of the employment position with reasonable accommodation. (Compare § 12940, subd. (a)(1) with 42 U.S.C. §§ 12111(8), 12112(a).) We see no statutory basis for construing the FEHA any differently from the ADA with regard to a plaintiff employee's burden of proof.

B.  *Plaintiff's Additional Claims*

Plaintiff contends that our statute is not clear, and that confusion on the burden of proof requirement is apparent in jury instructions on the definition of "qualified individual." For example, under BAJI No. 12.12, an instruction that was given in this case over defendant's objection that it should be amended to include a qualification element, the plaintiff is not required to prove his or her ability to perform the essential duties of the job with or without reasonable qualification. By contrast, the Judicial Council of California Civil Jury Instructions include the capacity to perform the essential duties of the job as one of the elements of proof for a disability discrimination claim under section 12940, subdivision (a). (Judicial Council of Cal. Civ. Jury Instns. (June 2006 rev.) CACI No. 2540.) The Directions for Use for CACI No. 2540 observe, however, that "there [is] a divergence of authority on whether the plaintiff is required to prove that he or she has the ability to perform the essential duties of the job."

The Directions for Use following CACI No. 2540 compare *Brundage* with a later decision, *Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344 [118 Cal.Rptr.2d 443]. *Bagatti* dealt with section 12940, subdivision (m), which governs an employer's obligation to afford reasonable accommodations to a worker with a disability. The court held that the plaintiff was not required to prove whether she could perform the essential functions of her position in order to establish a prima facie case of discrimination, concluding that these were requirements under the ADA but not under the FEHA. (*Bagatti, supra,* 97 Cal.App.4th at pp. 360–362.) Although it agreed with the *Bagatti* holding, the Court of Appeal here correctly concluded that *Bagatti* provided little guidance on the qualification issue because it involved a cause of action for the failure to accommodate under section 12940, subdivision (m), and the court believed it was unlikely the jury relied on the plaintiff's reasonable accommodation cause of action in reaching its verdict.

In addition, in claiming ambiguity under the FEHA, plaintiff also relies on the fact that in 1992 the Legislature amended the FEHA in order to replace the former term "physical handicap" with the term "physical disability" and to provide a greater amount of protection to employees than that provided under the 1990-enacted ADA. (§ 12940, as amended by Stats. 1992, ch. 913, § 23.1, pp. 4313–4316.) In amending the FEHA in significant part, including replacing the former term "physical handicap" with the term "physical disability," the Legislature stated: "It is the intent of the Legislature in enacting this act to strengthen California law in areas where it is weaker than the [ADA] and to retain California law when it provides more protection for individuals with disabilities than the [ADA]." (Stats. 1992, ch. 913, § 1, p. 4282; see *Colmenares v. Braemar Country Club, Inc., supra,* 29 Cal.4th at p. 1026.) In 2000, the Legislature also declared: "Although the federal act provides a floor of protection, this state's law has always, even prior to passage of the federal act, afforded additional protections." (§ 12926.1, subd. (a).)

The fact that the Legislature intended to provide plaintiffs with broader substantive protection under the FEHA, however, does not affect the Legislature's contemplation that a plaintiff must prove that he or she can perform the essential functions of the job in order to prevail on a claim under the FEHA. As we have explained, in disability discrimination actions, the plaintiff has not shown the defendant has done anything wrong until the plaintiff can show he or she was able to do the job with or without reasonable accommodation.

Plaintiff next contends that the California Code of Regulations further supports his statutory interpretation because it emphasizes the differences between the FEHA requirements and the ADA. The dissent claims that the administrative agency's adoption of the regulations is entitled to great weight

and supports plaintiff's position. The regulations provide that in California: "Disability discrimination is established by showing that an employment practice denies, in whole or in part, an employment benefit to an individual because he or she is an individual with a disability." (Cal. Code Regs., tit. 2, § 7293.7.) Plaintiff claims that the regulations provide additional support for his claim that under the FEHA, whether an employee is qualified or has the ability to perform the job's essential duties is for the employer to prove as part of its defense of the disability action.

To the extent the California Code of Regulations arguably creates ambiguity about the element of proof of a disability discrimination claim (see, e.g., Cal. Code Regs., tit. 2, § 7293.8, subd. (b)), we find the Legislature's intent supports defendant's position and must prevail. (See *Morris v. Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697] [administrative regulations that alter or amend a statute or enlarge or impair its scope are void and courts may strike them down].) Initially, plaintiff fails to consider the fact that since its codification, the FEHA has not imposed liability on an employer if an employee, even a disabled employee, could not perform his or her duties with or without reasonable accommodation. Indeed, the Legislature has never indicated the intent to compel an employer to employ such a person who could not perform the essential job duties with or without reasonable accommodation. To do so would defy logic and establish a poor public policy in employment matters.

## C. *Instructional Error*

As noted, the trial court read a pattern instruction to the jury that did not require plaintiff to shoulder the burden of proving he was qualified for the position, notwithstanding defendant's request that the instruction be modified to include the requirement. (BAJI No. 12.12.) The trial court did not instruct the jury on the FEHA's requirement that plaintiff must prove he was qualified for the position, or able to perform the job's essential duties. Both parties requested the jury be given BAJI No. 12.14, the "inability to perform defense," but the trial court inexplicitly omitted the instruction. Neither party objected to the omission, but the failure to object does not waive any right to the instruction because it is incumbent upon the trial court to instruct on all vital issues in the case. (*Manguso v. Oceanside Unified School Dist.* (1984) 153 Cal.App.3d 574, 581–582 [200 Cal.Rptr. 535] [erroneous instruction on material element of law deemed excepted to even absent objection at trial].)

Instructional error in a civil case is prejudicial " 'where it seems probable' that the error 'prejudicially affected the verdict.' " (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580 [34 Cal.Rptr.2d 607, 882 P.2d 298].) The jury here was never instructed that plaintiff must prove that he was able

to perform the job's essential duties. For this reason, defendant was prejudiced by the failure to so instruct, and we believe defendant is entitled to a new trial, with proper instructions, unless the evidence shows as a matter of law that plaintiff cannot meet his burden.

## III. CONCLUSION

Based on the foregoing, we conclude that under the FEHA, a plaintiff must demonstrate that he or she was qualified for the position sought or held in the sense that he or she is able to perform the essential duties of the position with or without reasonable accommodation. Juries should be so instructed. We therefore reverse the judgment of the Court of Appeal and remand the matter for proceedings consistent with this decision.

George, C. J., Baxter, J., and Corrigan, J., concurred.


**WERDEGAR, J.,** Dissenting.—I respectfully dissent.

The issue in this case is simple: In an action for disability discrimination under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.),[1] which party bears the burden of proving that the plaintiff's disability did or did not prevent the plaintiff from performing the essential duties of the job? Is ability to perform an element of the plaintiff's cause of action or is inability to perform an affirmative defense for the employer? As I explain below, although the statutory language at issue (§ 12940, subd. (a)(1)) does not expressly assign the burden of proof, established principles of statutory interpretation demonstrate that the reading best according with legislative intent is that inability to perform the job's essential duties is a defense on which employers have the burden of proof.

To reach its contrary conclusion, the majority ignores the statute's structure, distorts its legislative and regulatory history, and relies on inapposite authority. But fundamentally, a single logical error pervades the majority's discussion. Because section 12940, subdivision (a)(1) relieves employers from liability for firing or refusing to hire a disabled person if the disability prevents that person from performing the position's essential functions, the majority reasons, proof of ability to perform must be part of the plaintiff's case. (See maj. opn., *ante,* at pp. 262–264, 265–266.) This syllogism rests on the false premise that no affirmative defense exists or can exist to a claim of disability discrimination. In fact, as I will explain, section 12940 provides for several affirmative defenses, inability to perform being only one.

---

[1] All further unspecified statutory references are to the Government Code.

In effect, the majority creates a presumption that people with disabilities cannot perform in the workplace. Certainly, some disabilities prevent the performance of some jobs, even with reasonable accommodations by the employer; in those circumstances, the Legislature has relieved employers from any liability by affording them the affirmative defense provided in section 12940, subdivision (a)(1). But the rule that individuals with disabilities are presumed unable to work until they prove otherwise is not one intended by the Legislature. The majority simply reads it into the statute.

### DISCUSSION

### I.  *Under FEHA, Inability to Perform Is an Affirmative Defense*

To interpret FEHA in accord with the legislative intent, we start with the language of the statute. The pertinent language of section 12940 is as follows:

"It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification . . . :

"(a) For an employer, because of the . . . physical disability, mental disability, . . . of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

"(1) This part does not prohibit an employer from refusing to hire or discharging an employee with a physical or mental disability, or subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee with a physical or mental disability, where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations."

The statute makes clear that employers do not face liability under FEHA for firing or refusing to hire a disabled person who is unable, even with reasonable accommodations, to perform the essential duties of the position. In this case, for example, if because of his hepatitis C plaintiff Dwight D. Green was unable to perform the essential duties of a stationary engineer at a state prison, defendant State of California did not violate FEHA by terminating him because of his disability. The only interpretive question we face is who

bore the burden of proof on that issue—plaintiff or defendant. As nothing in the statute expressly allocates the burden of proof, I turn to other accepted guides to legislative intent.

A. *The burden of proof on an exception ordinarily lies with the party invoking the exception.*

Section 12940, subdivision (a) first prohibits in general terms, and without any pertinent limitation, adverse employment actions taken because of a person's physical or mental disability (as well as, e.g., race, sex and religion). In a new paragraph (*id.*, subd. (a)(1)), it then separately provides, as an exception to that prohibition, that an employer may terminate or refuse to hire a disabled person where, because of the disability, the person is unable to perform the job's essential duties. (See *Cassista v. Community Foods, Inc.* (1993) 5 Cal.4th 1050, 1056, fn. 5 [22 Cal.Rptr.2d 287, 856 P.2d 1143] [describing inability to perform as an exception to the discrimination prohibition].)

In a civil case, ordinarily, "[o]ne who claims the benefit of an exception from the prohibition of a statute has the burden of proving that his claim comes within the exception." (2A Singer, Statutes and Statutory Construction (6th ed. 2000 rev.) § 47:11, p. 251; see, e.g., *United States v. First City Nat. Bank* (1967) 386 U.S. 361, 366 [18 L.Ed.2d 151, 87 S.Ct. 1088]; *Da Vinci Group v. San Francisco Residential Rent etc. Bd.* (1992) 5 Cal.App.4th 24, 28 [6 Cal.Rptr.2d 461].) That interpretive guideline is clearly applicable to section 12940. Unlike the federal Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.), which incorporates into its central prohibitory provision a requirement the plaintiff be able, with reasonable accommodation if necessary, to perform the position's essential tasks (see 42 U.S.C. §§ 12112(a) [referring to a *"qualified* individual with a disability" (italics added)], 12111(8) [defining that term]), FEHA first states an unlimited prohibition against disability discrimination and then provides an exception for inability to perform. The difference is indicative of legislative intent. Absent a strong counterindication, I would apply the general rule that " ' "[o]ne seeking to be excluded from the sweep of the general statute must establish that the exception applies." ' " (*City of Lafayette v. East Bay Mun. Utility Dist.* (1993) 16 Cal.App.4th 1005, 1017 [20 Cal.Rptr.2d 658]; see *Barnes v. Chamberlain* (1983) 147 Cal.App.3d 762, 767 [195 Cal.Rptr. 417].)

B. *The various exceptions in section 12940, subdivision (a)(1) should be construed harmoniously.*

We should interpret section 12940, subdivision (a)(1) as a whole, construing its parts harmoniously and sensibly together and giving closely related

provisions compatible readings if possible. (*Troppman v. Valverde* (2007) 40 Cal.4th 1121, 1135, fn. 10 [57 Cal.Rptr.3d 306, 156 P.3d 328]; *Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) The Legislature, in the same sentence of section 12940, subdivision (a)(1) that contains the inability-to-perform exception, also set out two health or safety exceptions, removing from the general disability discrimination prohibition the discharge or refusal to hire a person who because of his or her disability "cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations." These health or safety exceptions have long been read both administratively and judicially as creating *defenses*, on which defendants bear the burden of proof. (Cal. Code Regs., tit. 2, § 7293.8, subds. (c), (d); *American National Ins. Co. v. Fair Employment & Housing Com.* (1982) 32 Cal.3d 603, 609–610 [186 Cal.Rptr. 345, 651 P.2d 1151] (*American National*); *Raytheon Co. v. Fair Employment & Housing Com.* (1989) 212 Cal.App.3d 1242, 1252 [261 Cal.Rptr. 197]; *Sterling Transit Co. v. Fair Employment Practice Com.* (1981) 121 Cal.App.3d 791, 798–799 [175 Cal.Rptr. 548].)

Indeed, in *American National* this court read section 12940, subdivision (a)(1) as providing essentially a single defense covering both inability to perform and inability to perform safely and without health risks. While barring disability discrimination in FEHA, the Legislature, we explained, "made present inability to perform a particular job efficiently, safely, and without danger to health one of the few defenses to a charge of discrimination. (§ 12940, subd. (a)(1).)" (*American National, supra*, 32 Cal.3d at pp. 609–610.) The majority, ignoring our prior interpretation in *American National*, now incongruously treats the sentence's two provisions differently, transforming the inability-to-perform portion from a defense to an element of the plaintiff's case. Nothing in the statute suggests the Legislature intended the inability-to-perform exception, uniquely, to be part of the plaintiff's case.

The majority's unharmonious reading also creates a potential for confusion at trial that the Legislature surely did not intend. An employer's claim that, because of disability, the plaintiff was unable to perform is not always distinguishable from a claim that, because of disability, employing the plaintiff would have endangered his or her health or safety or that of others in the workplace. In the present case, for example, defendant claims plaintiff, because of his disability, could not keep secure physical control over the inmates with whom he worked, with possibly "life-threatening" consequences. This is clearly a safety concern, and on retrial the jury in this case will presumably be given (as it was in the first trial) BAJI No. 12.16 or an equivalent instruction placing on defendant the burden to prove the health or safety exception applicable. But at the same time, according to the majority (maj. opn., *ante*, at pp. 266–267), the jury must be instructed that plaintiff

bears the burden of showing he can perform the job's essential duties—duties that, defendant asserts, include maintaining security over inmates. How the jury—or any future jury in a similar case—is expected to follow these contradictory directions is, to say the least, unclear.

C. *The Fair Employment and Housing Commission (FEHC) interprets section 12940, subdivision (a)(1) as providing an affirmative defense.*

The FEHC, the agency charged with adjudicating FEHA enforcement actions and interpreting FEHA by regulation (§ 12935, subd. (a)), also reads the statute as establishing an inability-to-perform defense. The FEHC's 1987 regulation (Cal. Code Regs., tit. 2, § 7293.8, subd. (b) (Code of Regulations section 7293.8(b)), placed in the same code section as the two health or safety defenses, provides: "Inability to Perform. It is a permissible defense for an employer or other covered entity to demonstrate that, after reasonable accommodation has been made, the applicant or employee cannot perform the essential functions of the position in question because of his or her disability." This regulation, the FEHC explained at the time, would "mak[e] clear that it is the employer's burden to prove, in defense of its discrimination, that the handicap <u>would</u> render the person unable to perform" (FEHC, Notice of Proposed Changes (Mar. 16, 1987) p. 1); its adoption would conform the commission's regulations to section 12940, subdivision (a)(1), which the commission believed "clearly makes inability to perform a <u>defense</u>." (FEHC, Final Statement of Reasons for Changes to Physical Handicap Regulations (Oct. 15, 1987) p. 4.)

The FEHC, employing its expertise developed adjudicating and administering FEHA, adopted Code of Regulations section 7293.8(b) after reaching the same conclusion in precedential adjudicative decisions[2] and after full notice, public comment, and deliberation. The commission has maintained its interpretation consistently for more than 20 years since first adopting it.

An administrative agency's reasonably contemporaneous statutory interpretation, adopted by the agency responsible for administering the statute after full deliberation and consistently maintained since, is entitled to great weight and will be overturned only if clearly erroneous. (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1012–1014 [32 Cal.Rptr.3d 89, 116 P.3d 550]; *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12–13 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) Following this principle, we have previously

---

[2] See *Dept. Fair Empl. & Hous. v. Cairo* (1984) No. 84-04, FEHC Precedential Decisions 1984–1985, CEB 3, page 15 (1984 WL 54284 at p. *11); *Dept. Fair Empl. & Hous. v. Kingsburg Cotton Oil Co.* (1984) No. 84-30, FEHC Precedential Decisions 1984–1985, CEB 11, page 28 (1984 WL 54310 at p. *21).

deferred to the FEHC's regulations and precedential decisions interpreting FEHA. (*Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1029–1030 [130 Cal.Rptr.2d 662, 63 P.3d 220]; cf. *Gay Law Students Assn. v. Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 491 [156 Cal.Rptr. 14, 595 P.2d 592].) The FEHC's interpretation of section 12940, subdivision (a)(1), far from being clearly erroneous, accords with the most reasonable reading of the statute's language, as explained above. We should accord it great weight. (Accord, *Ackerman v. Western Elec. Co., Inc.* (9th Cir. 1988) 860 F.2d 1514, 1518–1519 [holding, in reliance on Code of Regs., § 7293.8(b), that the burden of proving inability to perform lies with the defendant].)

The majority concedes Code of Regulations section 7293.8(b) "arguably" places the burden of proof on employers, but insists the regulation is inconsistent with the statute because the Legislature "has not imposed liability on an employer if an employee, even a disabled employee, could not perform his or her duties with or without reasonable accommodation." (Maj. opn., *ante*, at p. 266.) Here, the majority succumbs to the fallacy I identified at the outset. That the employer is not liable when the employee's disability renders the employee unable to perform does *not* imply ability to perform must be part of the plaintiff's case; rather, inability to perform may logically be made a matter of defense.[3] The FEHC's interpretation of section 12940, subdivision (a)(1) as providing an affirmative defense is thus not inconsistent with the legislative intent. Indeed, the FEHC's interpretation is the most reasonable one, given the statute's language and structure.

> D. *The Legislature, while amending section 12940, subdivision (a)(1), has acquiesced in the FEHC's interpretation.*

Legislative acquiescence in this long-standing administrative interpretation supports the conclusion that the FEHC has correctly interpreted section 12940, subdivision (a)(1). (*Sara M. v. Superior Court, supra*, 36 Cal.4th at pp. 1014–1015.) Not once in the 20 years that Code of Regulations section 7293.8(b), the definitive FEHC regulation, has been on the books—and applied in every disability discrimination action adjudicated by the agency— has the Legislature indicated any disapproval. In that time, the Legislature has amended section 12940, subdivision (a)(1) at least once: in 1992, it

---

[3] For the same reason, the majority begs the question in arguing that the burden of proof must logically lie with plaintiffs because, under section 12940, subdivision (a)(1), disability discrimination is not prohibited unless "the adverse employment action occurs because of a disability *and* the disability would not prevent the employee from performing the essential duties of the job." (Maj. opn., *ante*, at p. 262.) The fundamental logical flaw in the majority's reasoning is its premise that FEHA provides no affirmative defenses to a disability discrimination claim. As discussed above (pt. I.B. of this dissent) and below (pt. II.A. of this dissent), that premise is false.

changed references to "handicap" to "disability" and substituted the phrase "essential duties even with reasonable accommodations" for the word "duties." (Stats. 1992, ch. 913, § 23.1, p. 4313.)

The majority argues that this change was intended to incorporate into FEHA the federal ADA's allocation of burden of proof. (Maj. opn., *ante*, at p. 262.) But the ADA *expressly* allocates the burden of proof by requiring the plaintiff to prove he or she is a "qualified individual," defining that phrase to mean an individual who can perform the job's essential functions. Had the Legislature intended to abrogate the FEHC's construction of section 12940, subdivision (a)(1) by adopting the ADA's approach it would presumably have likewise inserted a "qualified individual" requirement into section 12940, subdivision (a) and defined that term as in the ADA. Moreover, while the 1992 amendments (a broad act making changes in public accommodations and housing law as well as employment) were generally intended to conform FEHA to the recently enacted ADA, the Legislature made very clear its intent that the ADA was to be a floor for protection of disabled Californians, not a ceiling. Section 1 of the 1992 act is explicit: "It is the intent of the Legislature in enacting this act to strengthen California law in areas where it is weaker than the [ADA] and to retain California law when it provides more protection for individuals with disabilities than the [ADA]." (Stats. 1992, ch. 913, § 1, p. 4282.) The majority's supposition that the 1992 Legislature intended to *weaken* California's protections for the disabled by imposing a new burden of proof on disability discrimination plaintiffs is thus without foundation.

## II. *The Majority's Nontextual Arguments Fail Scrutiny*

The majority offers two arguments drawn from outside the text of section 12940, subdivision (a)(1) for placing on plaintiffs the burden of proof regarding ability to perform: Evidence Code section 500 mandates it, and prior Court of Appeal decisions support it. Neither withstands analysis.

### A. *Evidence Code section 500.*

First, the majority relies on Evidence Code section 500, which the majority quotes as providing that " 'a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief . . . that he is asserting.' " (Maj. opn., *ante*, at p. 263.) But the majority's quotation omits a crucial phrase. The statute actually provides that "a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief *or defense* that he is asserting." (Evid. Code, § 500, italics added.) Evidence Code section 500 establishes that ordinarily the party to whose case a fact is essential bears the burden of proving that

fact, but the statute "does not attempt to indicate what facts may be essential to a particular party's claim for relief or defense." (Cal. Law Revision Com. com., reprinted at 29B pt. 1 West's Ann. Evid. Code (1995 ed.) foll. § 500, p. 554.) It does not, therefore, tell us which facts are part of a disability discrimination claim for relief under FEHA and which are raised by way of defense.

If there were no possible affirmative defenses to a disability discrimination claim under FEHA—if every ultimate fact bearing on illegality were necessarily an element of the plaintiff's cause of action—then Evidence Code section 500 would support the majority's position. But affirmative defenses do exist. Disability discrimination under FEHA is subject to the health or safety defenses of Government Code section 12940, subdivision (a)(1), discussed earlier in this opinion, as well as the general defense of "bona fide occupational qualification" established by the introductory phrase of section 12940.[4] Reference to Evidence Code section 500 thus does not assist in answering the question presented here: Is ability to perform part of the claim for relief or is inability an affirmative defense?

### B. Brundage *and the* McDonnell Douglas *prima facie case.*

For decisional authority, the majority invokes *Brundage v. Hahn* (1997) 57 Cal.App.4th 228 [66 Cal.Rptr.2d 830] (*Brundage*) and other appellate decisions assertedly following it. (Maj. opn., *ante*, at pp. 257, 260.) In doing so, the majority goes astray in two ways: First, it implicitly confuses the elements of a cause of action under section 12940, subdivision (a)—the issue presented here—with the requirements for indirect proof of discriminatory motive by circumstantial evidence (the *McDonnell Douglas* prima facie case[5] referenced in *Brundage*)—an issue not involved in this case. Second, as a consequence of the foregoing, it fails to acknowledge that *Brundage* has nothing to say about the issue before us.

In a brief and expressly nondispositive discussion, the *Brundage* court stated that one of the ingredients for a so-called *McDonnell Douglas* prima

---

[4] Section 12940 prohibits discrimination on the specified bases "unless based upon a bona fide occupational qualification." A bona fide occupational qualification is an employer practice that "on its face excludes an entire group of individuals on a basis enumerated in the Act (e.g., all women or all individuals with lower back defects)," but which is justified because the employer proves that "all or substantially all of the excluded individuals are unable to safely and efficiently perform the job in question and because the essence of the business operation would otherwise be undermined." (Cal. Code Regs., tit. 2, § 7286.7, subd. (a); see *West v. Bechtel Corp.* (2002) 96 Cal.App.4th 966, 983–984 [117 Cal.Rptr.2d 647]; *Bohemian Club v. Fair Employment & Housing Com.* (1986) 187 Cal.App.3d 1, 19–20 [231 Cal.Rptr. 769].)

[5] *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668, 93 S.Ct. 1817] (*McDonnell Douglas*).

facie case for disability discrimination is proof the plaintiff is either "a qualified individual" or " 'qualified for the job.' " (*Brundage, supra,* 57 Cal.App.4th at p. 236 & fn. 1.) In the case before it, however, the court held summary judgment was proper because the undisputed evidence showed the plaintiff was not fired "because of" her disability (§ 12940, subd. (a)) but for a nondiscriminatory reason (*Brundage,* at pp. 236–237); it thus had no occasion to and did not address, even in dictum, the proper allocation under FEHA of burden of proof on ability to perform.

The *McDonnell Douglas* prima facie case referenced in *Brundage* is "designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.' " (*Trans World Airlines, Inc. v. Thurston* (1985) 469 U.S. 111, 121 [83 L.Ed.2d 523, 105 S.Ct. 613].) It does not define the elements of the cause of action and "does not apply in every employment discrimination case. For instance, *if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case.*" (*Swierkiewicz v. Sorema N.A.* (2002) 534 U.S. 506, 510 [152 L.Ed.2d 1, 122 S.Ct. 992], italics added; accord, *Trans World Airlines, Inc. v. Thurston,* at p. 121; see also *Rizzo v. Children's World Learning Centers, Inc.* (5th Cir. 1996) 84 F.3d 758, 762 [same as to a disability discrimination plaintiff who proved discriminatory intent by direct evidence].)

The *McDonnell Douglas* test is inapplicable here, where plaintiff has shown by direct (indeed, undisputed) evidence that defendant terminated him because of his disability. Defendant's responsible manager told plaintiff at the time that he could not return to his job as a stationary engineer because, due to his hepatitis C, he had not been medically cleared for full duty in that position. (Maj. opn., *ante,* at pp. 258–260.) The question here was not *why* the employer took the action it took, but whether the employer's admittedly discriminatory decision was legally warranted, i.e., was justified by plaintiff's asserted inability to perform. Irrespective, therefore, of whether a plaintiff generally must show he or she is "qualified" in order to make a *McDonnell Douglas* prima facie case, plaintiff here had no need to do so because he had sufficient direct evidence he was fired because of his disability.[6]

*Brundage* did not hold qualification is an element of the FEHA employment discrimination cause of action, and indeed it is not. Every disparate-treatment plaintiff under FEHA must show that the action complained of was taken "because of" a prohibited basis. (§ 12940, subd. (a).) Where, as in the

---

[6] The *McDonnell Douglas* test is also inapplicable here because this appeal arises not from summary judgment or nonsuit but from a jury verdict. Once an intentional discrimination case proceeds to jury deliberations, the existence of a prima facie case plays no role—the jury is not instructed on its requisites. (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 203–205 [48 Cal.Rptr.2d 448].)

usual case, the plaintiff seeks to prove discriminatory intent by circumstantial evidence, the plaintiff indeed will need to show he or she was qualified for the position (or, in a termination case, was competently performing the job) in order to make a prima facie case. But in the relatively rare case where the plaintiff has direct evidence of discrimination, as where the employer has expressly dismissed or refused to hire the plaintiff on a prohibited basis, the plaintiff generally need not *also* show that he or she can perform.[7] This is such a case.

For these reasons *Brundage* and its progeny are inapposite. Indeed, the only decision (prior to the Court of Appeal's in this case) that has considered section 12940, subdivision (a)(1)'s history of administrative interpretation and rendered a holding on the burden of proof issue is the Ninth Circuit's decision in *Ackerman v. Western Elec. Co., Inc., supra,* 860 F.2d at pages 1518–1519. The *Ackerman* court agreed with the FEHC that the burden lay with defendants. Oddly, *this* decision the majority completely ignores.

## Conclusion

The majority's mandate that persons with disabilities be presumed unable to work until they prove themselves able is supported by neither the text nor the history of FEHA. To the contrary, such a presumption is precisely what our antidiscrimination law was designed to combat. In 1973, when a prohibition on physical handicap discrimination was first added to Labor Code former section 1420, the predecessor of Government Code section 12940 (together with the inability-to-perform exception later included in § 12940, subd. (a)(1)), the legislative goal was "to create a positive attitude toward employment of the handicapped and . . . obtain more job opportunities for disabled citizens who are now on welfare rolls." (Cal. Health and Welf. Agency, Enrolled Bill Rep. on Assem. Bill No. 1126 (1973–1974 Reg. Sess.) Sept. 21, 1973, p. 1.) By barring discrimination on the basis of disability, while allowing employers to defend on grounds of inability to perform, the Legislature sought to overcome the then widespread assumption that disabled people had no place in the workplace. Now, by reading into FEHA a

---

[7] For example, if a restaurant's manager rejects a female applicant for a wait staff position with the explanation that "We only hire men as waiters here," the rejected applicant can show sex discrimination by direct evidence and need not *also* prove that she would have been a competent waitress. She has shown the adverse action was taken "because of . . . disability" (§ 12940, subd. (a)) and need not also show qualification, because qualification, while sometimes an ingredient of the *McDonnell Douglas* prima facie case, is not an element of the cause of action.

Similarly, a disabled plaintiff who (as in this case) shows he was told, "We're letting you go because your illness makes you unable to do the work" has proven discrimination by sufficient evidence to get to a jury. The employer may attempt to show that the discrimination was not illegal because the illness really did, even with reasonable accommodation, prevent the plaintiff from fulfilling his duties (§ 12940, subd. (a)(1)), but in this situation qualification is a matter for defense, not part of plaintiff's case.

requirement that persons with disabilities must prove their ability to perform before they can complain of discrimination, the majority effectively endorses this legally discredited assumption. For this reason, I dissent.

Kennard, J., and Moreno, J., concurred.

The petition of appellant Dwight D. Green for a rehearing was denied October 10, 2007. Kennard, J., Werdegar, J., and Moreno, J., were of the opinions that the petition should be granted.