[No. B206420. Second Dist., Div. Four. Mar. 23, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
CARL HENRY, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part I. of the Factual and Procedural Background and part I. of the Discussion.

**COUNSEL**

Alan Stern, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Kenneth C. Byrne and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SUZUKAWA, J.**—Defendant Carl Henry appeals from the judgment entered following his conviction by jury of two counts of first degree burglary and one count of auto burglary. (Pen. Code, §§ 460, 459.)[1] The jury also found that he had suffered a prior serious or violent felony conviction. (§§ 1170.12, subds. (a)–(d), 667, subds. (a)(1), (b)–(i).) He appeals, contending that the trial court violated his right to be present during the proceedings and there is insufficient evidence to sustain his conviction for auto burglary.

In the published portion of the opinion, we conclude that there is sufficient evidence to support defendant's conviction for auto burglary. In the unpublished portion of the opinion, we find that the trial court properly excluded defendant from the trial. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

I. *Defendant's Removal From the Courtroom*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *The Evidence*

On July 29, 2007, at approximately 11:45 p.m., Alexander Scott looked outside his window and saw defendant trying to open the hood of a car with a pair of pliers or a wrench.[2] Scott called 911, remained on the line, and reported what he observed. Defendant eventually opened the hood and appeared to be using his hands to measure something in the engine compartment. He lowered the hood very carefully, walked across the street, took out keys, opened the door of another vehicle, and got inside. He opened the hood of that car, went to the engine compartment, and, again, appeared to be measuring something under the hood using his hands. Defendant closed the hood, walked across the street, and entered an apartment building next to Scott's. Scott saw deputies arrive at the location. They went to the apartment building where Scott had seen defendant enter. The deputies returned with defendant, and Scott told them that he was the person Scott had seen using a

---

[1] All further statutory references are to the Penal Code.

[*] See footnote, *ante*, page 530.

[2] He saw defendant's booking photo and testified that it depicted the man he saw that night.

tool to open the hood of a car. In court, Scott looked at a photograph of a black Toyota Camry bearing the license plate number 3TTL577 and testified that it was the car defendant entered with a key.

Fathima Zubair was the owner of a 1998 Toyota Camry, the vehicle whose hood defendant pried open. When Zubair parked the car on July 29, she locked and secured it. The hood of the car was closed and it was normally opened by pulling a release latch inside the passenger compartment. She did not give anyone permission to open the hood of her vehicle.

On August 28, 2007, Elio Maglietto was working outside in the area of the 1000 block of West 187th Street in the City of Gardena, when he saw a black car pass by and park at an angle in front of a house. He saw defendant get out of the car, wearing a hard hat and a safety vest.[3] Defendant walked down a driveway toward an open garage door. Maglietto moved closer to defendant. Defendant saw him, turned around, walked up and down the sidewalk a few times as if he was looking for something, entered the black car, and drove away.

Maglietto was able to see the license plate on the car defendant was driving. He provided police with the partial license plate number of 3TL577. He was familiar with the area where he had seen defendant and opined that West 184th Street was about a minute away by car.

On that same day, at approximately 12:30 p.m., Susannah Bulatao was at home on the 1200 block of 184th Street in Gardena. She opened her garage door to prepare to leave when she noticed a car parked alongside her driveway. Bulatao went to her front porch and saw a man wearing what looked like a yellow city maintenance uniform walking away from her garage carrying two tool boxes that belonged to her husband. The boxes had been inside the garage. She told the man to put the boxes back, but he placed them in the trunk of a black car, and drove away. She was able to get the license plate number, which she wrote down and provided to police. The number was 3TTL577.

Approximately two weeks later, Bulatao was shown a photographic lineup. She was unable to identify anyone as being the person she saw. She said the individuals in photograph numbers two and five looked most like the person. Defendant's photograph was number two.

---

[3] Maglietto identified defendant from his booking photo, and selected defendant's picture in the photographic lineup about two weeks later.

On August 29, 2007, at around 7:15 p.m., David Contreras saw defendant, wearing a hard hat and a lime or yellow safety vest, enter the garage belonging to his next-door neighbor, Alma Perez.[4] The person came out of the garage carrying a bicycle. He put the bicycle in the trunk of a black car and drove away.

After defendant left, Contreras contacted Alma Perez. As a result, she went into her garage and noticed that her son's bicycle was gone. She did not give anyone permission to enter her garage and remove the bicycle.

Los Angeles Police Detective Charles Blomeley contacted Department of Motor Vehicles resources and determined that defendant was the registered owner of the vehicle bearing the license plate number 3TTL577. He prepared the photographic lineup and presented it to the witnesses.

On September 7, 2007, Los Angeles Police Officer Justin Kravetz stopped defendant, who was the driver and sole occupant of a black Toyota Camry bearing the license plate number 3TTL577.[5] Kravetz found a yellow hard hat inside the vehicle.

## DISCUSSION

I. *The Court Properly Conducted the Trial Out of Defendant's Presence*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *There Is Sufficient Evidence to Support the Auto Burglary Conviction*

 Defendant contends that the evidence is insufficient to sustain his conviction for auto burglary. In a matter of first impression, he argues that entry into the area under the hood of a vehicle does not constitute a violation of section 459. He suggests that the burglary statute is ambiguous and must be construed in his favor. We disagree. In our view, the plain language of the burglary statute outlaws the act of breaking into any portion of a vehicle when its doors are locked.

---

[4] Contreras testified that defendant's booking photo and his picture in the photographic lineup depicted the man Contreras saw enter his neighbor's garage.

[5] Kravetz testified that the person shown in defendant's booking photo was the driver of the car he stopped.

[*] See footnote, *ante,* page 530.

Section 459 provides in pertinent part: "Every person who enters any . . . vehicle as defined by the Vehicle Code, when the doors are locked, . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." There is no dispute that the Toyota Camry at issue had its doors locked. The question is, did defendant enter the vehicle?

■ "Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them their usual and ordinary meaning. [Citation.] The statute's plain meaning controls the court's interpretation unless its words are ambiguous. If the plain language of a statute is unambiguous, no court need, or should, go beyond that pure expression of legislative intent. [Citation.]" (*Green v. State of California* (2007) 42 Cal.4th 254, 260 [64 Cal.Rptr.3d 390, 165 P.3d 118].)

Defendant concedes that one violates the burglary statute by entering the trunk of a vehicle. He submits, however, "that a car hood is much different than a car's trunk," and suggests that "[o]pening a car hood is akin to tampering with a car, rather than auto burglary." Defendant's analysis places too much emphasis on the method of entry and too little on the area of the vehicle that is invaded.

■ If the Legislature had intended the burglary statute to read as defendant suggests, it would have been a simple matter to state that a person committed the crime only if he or she entered the passenger compartment or trunk of a vehicle. "We must use a liberal and commonsense approach to ascertain if a particular act constitutes a vehicle burglary within the confines of Penal Code section 459. [Citation.] This criminal statute is to be construed flexibly in light of the legislative objective to make it more serious to break into the interior sections of locked cars than merely stealing from them. [Citations.]" (*People v. Allen* (2001) 86 Cal.App.4th 909, 915–916 [103 Cal.Rptr.2d 626].)

■ We have little difficulty determining that one enters a vehicle within the meaning of section 459 when he or she gains access to the area under the hood in the manner utilized by defendant. The hood compartment secures the engine and its components, and like the passenger compartment and trunk, the owner of the vehicle reasonably expects that by locking the car doors the area will be safe from intrusion. Defendant asserts this is not true, claiming that "[i]n many cars a hood compartment can be entered by merely manipulating a latch outside the car at the hood, without any entry into the car. This

may well be the reason that the Legislature did not specifically add entry into the hood as [a] means to satisfy the first element of vehicle burglary." However, defendant ignores the fact that the hood area of the car he broke into normally could not be entered without pulling the latch in the passenger compartment, which was locked.

The case of *In re Young K.* (1996) 49 Cal.App.4th 861 [57 Cal.Rptr.2d 12], cited by defendant, is distinguishable. There, a juvenile assisted two friends who removed the headlights from a parked car and was found to have committed a burglary. On appeal, he contended that " 'entry into the head-lamp housings of an automobile to steal its headlamps' is not an 'entry into a vehicle' within the meaning of section 459." (*Id.* at p. 863.) The appellate court agreed, observing that "[u]nlike the car's interior or its trunk, headlamp housings can be 'entered' without regard to whether the car is locked . . . ." (*Id.* at p. 864.) As discussed above, the hood compartment of the locked Toyota Camry normally could not be entered without breaking into the passenger compartment.

In keeping with the plain language of section 459 and the legislative intent to treat entry into a locked vehicle more harshly than simple theft, we find that defendant's act of prying open the hood of the locked Camry constitutes a burglary.

Defendant's second argument, that there is insufficient evidence to establish that he had the specific intent to commit a theft when he entered the vehicle, need not detain us long. If we are satisfied that "the facts and circumstances of a particular case and the conduct of the defendant reasonably indicate" that his purpose in entering the hood area of the vehicle was to commit a theft, we will not disturb the jury verdict. (*People v. Nunley* (1985) 168 Cal.App.3d 225, 232 [214 Cal.Rptr. 82].)

We start with the act itself. One generally does not take the time and effort to break open the hood of a vehicle unless he or she intends to take something from the engine compartment. Here, the testimony revealed that the vehicle defendant broke into was the same make and model as his own, indicating that he intended to extract a part that he could use. Indeed, the witness said defendant appeared to use his hands to measure something under the hood of the burglarized vehicle and his own car. The evidence establishing defendant's intent to commit larceny is substantial.

## DISPOSITION

The judgment is affirmed.

Epstein, P. J., and Manella, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 10, 2009, S172433.