Filed 11/22/21  P. v. Smith CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JASON THOMAS SMITH,<br><br>    Defendant and Appellant. | B306980<br><br>Los Angeles County<br>Super. Ct. No. VA151380 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Debra Cole-Hall, Judge.  Affirmed.

Richard B. Lennon and Pilar M. Escontrias, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Roberta L. Davis and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Jason Thomas Smith broke into a home and assaulted his girlfriend. A jury convicted him of numerous crimes. Smith challenges only his conviction for first degree burglary, claiming it is unsupported by the evidence. Finding sufficient evidence to sustain the verdict, we affirm. Statutory references are to the Penal Code.

I

In reciting relevant facts about the incident, we omit conflicting evidence. Our job in appeals of this kind is to look for substantial evidence, not to resolve evidentiary conflicts. (See *People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*).)

Jessica Ferris was housesitting for a friend in August 2019. Smith was staying there with Ferris and Ferris's young son. Smith and Ferris had been dating for several years.

Ferris also spent time with Smith's younger sister. They had gone shopping, and the sister left her wallet in Ferris's purse.

While at the friend's home, Smith and Ferris got into an argument. Ferris told Smith to leave. Smith, in turn, demanded that Ferris give him money, the wallet, a bottle of liquor, or a ride. Ferris refused and again told Smith he needed to leave. She said she would get the wallet to Smith's sister herself.

Smith left, and Ferris locked the doors and windows. She was afraid he would return.

He did, twice. The second time, Ferris heard a loud noise, saw a large hole by the "doggie" or pet door, and saw Smith inside the house. Smith did not have permission to reenter the home. Ferris called 911 and tried to prevent Smith from leaving—she had told her son to run to a neighbor's house and wanted to keep

Smith away from him. Smith and Ferris fought physically. Smith heard sirens. Then he fled.

Police found Smith hours later, after getting a call about a trespasser. Smith had been hiding under a grill at a nearby home. He told police he had returned to the house where his girlfriend was staying because he had no money or clothes with him. When he returned, he argued with Ferris again and left. He returned a second time and discovered the doors were locked. So he broke the doggie door to get in.

An amended information charged Smith with injuring his girlfriend (§ 273.5, subd. (a)), vandalism causing over $400 in damage (§ 594, subd. (a)), misdemeanor trespassing (§ 602, subd. (m)), first degree burglary with a person present (§ 459), and assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)). The information also alleged various enhancements.

A jury found Smith guilty of misdemeanor assault and battery (§ 243, subd. (e)(1)) and misdemeanor assault (§ 240) as lesser included offenses of the first and fifth counts. The jury also found Smith guilty as charged on the remaining counts. The trial court sentenced Smith to five years and four months in state prison.

## II

Smith challenges only his burglary conviction, arguing there is insufficient evidence of key elements.

In assessing Smith's challenge, we examine the record in the light most favorable to the prosecution. We discern whether there is substantial evidence from which any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. And we presume in support of the judgment

3

the existence of every fact the jury reasonably could deduce from the evidence. (*Zamudio*, *supra*, 43 Cal.4th at p. 357.) We reverse only if it appears there is insufficient evidence to support the verdict under any hypothesis. (*Ibid.*)

First degree burglary requires entering a dwelling with the intent to commit theft or any felony. (§§ 459, 460, subd. (a), 490a.) Theft encompasses larceny, which is the trespassory taking and carrying away of another's personal property with the intent to permanently deprive the owner of possession. (§ 484, subd. (a); *People v. Gonzales* (2017) 2 Cal.5th 858, 865–866 (*Gonzales*); *People v. Kaufman* (2017) 17 Cal.App.5th 370, 379–380.)

Smith argues there is insufficient evidence of the requisite intent and lack of consent. (See *People v. Bunyard* (2017) 9 Cal.App.5th 1237, 1243, fn. 4 ["A trespassory taking is a taking without the property owner's consent."].) As we explain, his arguments fail.

Rarely is there direct evidence of the intent required for burglary. Thus we may infer intent from the facts and circumstances. (*People v. Lewis* (2001) 25 Cal.4th 610, 643.)

Substantial circumstantial evidence of intent exists here.

The evidence shows Ferris had the sister's wallet, which contained more than $200. Smith and Ferris got into an argument over the wallet, and Ferris asked him to leave. Smith demanded money or the wallet. Ferris refused both demands and told him she would get the wallet to Smith's sister. Smith left but later broke into the home using the doggie door. He fled after getting into a physical fight with Ferris and hearing sirens. Smith admitted to police that he wanted his sister's money and returned to the house because he had no money or clothes.

4

Further, while Smith was in jail, he and Ferris had the following recorded exchange about Smith's predicament:

*[Ferris:] Yeah. Okay, so – no, Jason, I had no fuckin' idea they were going to do that. And I was looking it up and I'm pretty sure, like, that's a big fuckin' stretch for them to add that charge on. So I don't know if, like, maybe they're just doing it 'cause they want to at least try and get, like, something to stick. But they have to show that . . . you had intent to commit a felony after you came inside.*

*[Smith:] Yeah, well they're saying that my intent was to go inside and hurt you.*

*[Recording:] This call is being recorded.*

*[Ferris:] But your intent was to go inside and get your sister's wallet, so.*

*[Smith:] Because I didn't hurt you.*

*[Ferris:] Or the alcohol or whatever. Huh? Because what? That's not what I said. I don't know. I think if – like for me if I was a juror, I would be, like, uh, that's kind of a fuckin' stretch."*

The jury was entitled to draw a negative inference from Smith's failure to refute Ferris's description of his intent.

All of this is substantial circumstantial evidence that, when Smith broke into the house, he harbored the intent to take *and to use* the money in his sister's wallet and therefore to deprive her of it permanently.

Smith admittedly had no money. He knew where to get some. He had asked for the money and had been rebuffed.

Smith contends he never ended up taking the money—or attempting to take it—and implies a jury could not conclude he had the requisite intent. But burglary does not require a taking; it is complete upon entering the building with the intent to steal

something. (*Gonzales*, *supra*, 2 Cal.5th at p. 872; *People v. Magallanes* (2009) 173 Cal.App.4th 529, 535–536.) A jury reasonably could have concluded Ferris thwarted Smith's plans when she confronted him inside the home and called police.

Smith appears to argue nothing shows he had an intent to steal during his second trip to the house. Smith admitted to police he returned to the house because he had no money or clothes. His first trip was unsuccessful, however. He returned again and broke into the house this time. Smith still had no money or clothes, and he needed money. This evidence gives rise to a logical inference that Smith's second trip, like the first, was for the money. (See *Zamudio*, *supra*, 43 Cal.4th at p. 357 [reviewing court must accept logical inferences the jury might have drawn from circumstantial evidence].)

Smith says there was no evidence he lacked consent to take his sister's money. This, too, is incorrect.

Smith asked for the wallet and the money, and Ferris told him he could have neither. The evidence also showed Smith's sister left her wallet with Ferris, Ferris planned to send the wallet back to her, and Ferris told Smith so. This evidence gives rise to a logical inference the sister entrusted the wallet to Ferris, and Smith had no right to it. It does not matter that the wallet and its contents were not Ferris's. (See *People v. Smith* (2009) 177 Cal.App.4th 1478, 1491 [for purposes of larceny, "ownership" and "possession" are synonymous; having a right of possession as against the thief is enough].)

Smith argues the evidence suggests other, exonerating inferences. That does not help him here, where we review for substantial evidence. (See *Zamudio*, *supra*, 43 Cal.4th at p. 357; see also *id.* at p. 358 [no reversal where the circumstances

6

reasonably justify the jury's findings but also could support a contrary finding].)

We will not disturb a jury verdict where the facts and circumstances of the case and the conduct of the defendant reasonably signal the defendant's purpose in entering the property was to commit a theft.  (*People v. Henry* (2009) 172 Cal.App.4th 530, 536.)  That is the case here.

## DISPOSITION

We affirm the judgment.

WILEY, J.

We concur:

GRIMES, Acting P. J.

STRATTON, J.

7