Filed 11/8/23  Robinson v. County of Los Angeles CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KEISHA ROBINSON, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF LOS ANGELES, <br><br> Defendant and Respondent. | B317521 <br><br> (Los Angeles County Super. Ct. No. 20STCV01022) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William Fahey, Judge.  Affirmed in part, reversed in part, and remanded.

The Finkel Firm, Jake Finkel, Sheryl Marx; Law Office of Maximilian Lee and Maximilian Lee, for Plaintiff and Appellant.

Peterson, Bradford, Burkwitz, Gregorio, Burkwitz, and Su, Avi Burkwitz, Gil Burkwitz, and Avery Canty, for Defendant and Respondent.

_____

Plaintiff and appellant Keisha Robinson sued defendant and respondent County of Los Angeles (the County), alleging several violations of the Fair Employment and Housing Act (the FEHA), Government Code section 12900 et seq.[1]  Robinson alleges that while employed by the County Public Defender's office in Long Beach, she was subjected to sexual harassment and terminated as the result of gender and disability discrimination. She also asserts the County failed to engage in an interactive process in good faith, failed to provide a reasonable accommodation, retaliated against her, and failed to investigate and prevent harassment and discrimination.

The trial court granted the County's motion for summary judgment or, alternatively, summary adjudication.  We affirm as to Robinson's claims for sexual harassment and gender discrimination.  We reverse as to Robinson's claims for disability discrimination, failure to accommodate, failure to engage in the interactive process, retaliation, and failure to prevent discrimination.

## FACTUAL AND PROCEDURAL BACKGROUND

Robinson began working for the County in 1999.  In 2015, she suffered a permanent injury while working for the County's fire department, caused by repetitive typing.

In late March 2018, Robinson began working at the County Public Defender's Long Beach office as a student professional worker.  A student professional worker is employed part time while also attending school, and Robinson worked approximately

_____

[1]     All undesignated statutory references are to the Government Code.

2

30 hours a week. The County's official job description for the position encompasses a wide range of possible duties depending on the occupational area, including tasks such as assisting in filing legal documents and preparing reports. The job description indicates the student worker will do "related clerical work as required."

Olivia Janelle Wyatt supervised Robinson. Wyatt's supervisor was Gregory McCambridge. Robinson performed clerical tasks, including answering phones, helping clients, conducting research, making copies, data entry, and typing.

***Facts Relevant to the Sexual Harassment and Gender Discrimination Claims***

Robinson alleged that McCambridge frequently leered and stared at her "in a sexual manner." She tried to avoid him because he made her uncomfortable. In late April 2018, at a work party for Administrative Staff Appreciation Day, McCambridge gave two male employees cards and shook their hands. When McCambridge handed Robinson a card, he hugged her instead of shaking her hand. In a declaration filed in opposition to the motion for summary judgment, Robinson indicated the hug was unwanted. She "felt completely grossed out and embarrassed" and was "very upset."

Around one week later, McCambridge came up behind Robinson as she worked in her cubicle and said something like, " 'Hey, Keisha, when are you gonna [*sic*] stop going on those porn sites' " or " 'You know you're not supposed to be on the porn.' "[2]

---

[2] In a May 31, 2018 complaint letter, Robinson indicated McCambridge made the comment on one of the first days of her employment, and that he said: " 'Make sure you stay off those porn sites.' "

3

Robinson was shocked and embarrassed. She felt this was an invitation to flirt and believed "McCambridge's demeanor changed to angry" when she "did not respond in the manner that McCambridge wanted."

According to McCambridge, he did not see pornography or anything inappropriate on Robinson's computer when he made the comment. He told Robinson to stay off of pornography sites because "she had access to the internet but cannot utilize it for inappropriate reasons," and he told her "what [he] tell[s] all the lawyers." McCambridge explained that he gave this instruction to Robinson and not the employee working next to her because that employee already knew the policy.

### Facts Relevant to the Disability-Related Claims and Termination

Near the end of her shift on Friday, May 25, 2018, just before Memorial Day weekend, Robinson gave Wyatt a letter from a doctor indicating Robinson had medical restrictions. The letter stated that Robinson could not work at a computer screen for longer than 30 minutes per hour, and could not push, pull, or lift anything over 20 pounds. When Robinson gave Wyatt the letter, Wyatt asked " 'Why are you giving me this now?' " Robinson responded that she had just received the letter, and Wyatt replied that they would have to hold a meeting to discuss the letter.

On Tuesday, May 29, the first workday after the holiday weekend, Wyatt told Robinson "10 to 20 times" that they were going to have a meeting about the letter. By this time, Lorraine Moore Welch, a return-to-work coordinator in the human resources department, was involved. According to an e-mail Welch sent to her supervisor in June 2018, she, Wyatt, and

4

McCambridge met together first, before meeting with Robinson, on May 29. Wyatt reported that she had no work Robinson could do. McCambridge thought it was possible other attorneys might have work for Robinson. Welch recounted that McCambridge said "he would check" and "let us know the following day. We informed the [employee] we will let her know, and if we were unable to locate a position, we would have to release her."[3]

However, according to Welch's e-mail, that same afternoon, the County held the "interactive process meeting" regarding Robinson's medical restrictions. Robinson, Wyatt, and McCambridge attended in person. Welch attended telephonically. At her deposition, Welch testified that Wyatt said Robinson could not perform the duties of her current role given her work restrictions. Welch's e-mail summarized the meeting: "During the [interactive process meeting], both [Wyatt and McCambridge] confirmed there were no assignments that would accommodate [Robinson's] work restrictions and as the HR Rep I informed the [employee] of the release. After the meeting, we discussed it further, and [McCambridge] really wanted to find work for her because he hated to lose the resource."

Wyatt testified that the interactive process meeting ended with her and McCambridge trying to figure out "other tasks" for Robinson, so she told Robinson to "sit at her cubicle and just . . . relax, what have you, until the next day." McCambridge testified that it was his understanding at the end of the meeting that Robinson was still employed.

---

[3]     The e-mail does not clearly indicate when Robinson was informed that "[they would] let her know," as she was not present during the "pre-meet."

Robinson, however, testified that during the meeting McCambridge said he did not believe Robinson could do her job with the restrictions on computer use.[4]  Robinson also testified that Welch explained they did not have any work for her.  Welch told Robinson she could clean out her desk and leave.  Robinson began to cry and was emotional.  According to Robinson, no one told her they would look for another position for her.

It is undisputed that Robinson did not return to work the next day.  According to Robinson, Wyatt called her two days after the meeting and asked why she had not reported for work.  Robinson responded: " 'I was' – 'you guys said I was fired.'  And but actually [Wyatt] was calling to tell me that, 'Because you're fired, if you want your check, you need to bring your badge, and you need to bring your keys in order to get your check.' "

According to Wyatt, she called Robinson the day after the meeting and asked if she planned to come to work.  Robinson replied she did not plan to return because it would be a "hostile environment."  Wyatt then told Robinson that if she was not planning on returning to work, she would need to come into the office to complete exit paperwork, which Robinson did on May 31.  On that day, Wyatt again asked if Robinson intended to sign in and work, and Robinson again replied that she would not return to work because she thought it would be a "hostile environment."

The same day, Robinson sent a letter to the Los Angeles County Board of Supervisors claiming she was terminated and harassed because of her disability.  She also reported McCambridge's pornography comment.  The letter prompted an inquiry by a public defender's office employee responsible for

---

[4]     Robinson testified that McCambridge used his own position as an analogy, stating that he used a computer all day.

6

conducting County "policy of equity" complaint investigations. The employee interviewed Robinson. There is no evidence in the record about the outcome of the investigation.

***Procedural History***

In January 2020, Robinson filed suit against the County. Her operative first amended complaint asserts seven causes of action under the FEHA: (1) sexual harassment; (2) gender discrimination; (3) disability discrimination; (4) failure to accommodate; (5) failure to engage in the interactive process; (6) retaliation; and (7) failure to investigate and prevent harassment and discrimination.

The County moved for summary judgment, or, in the alternative, summary adjudication of all claims. In December 2021, the trial court granted the motion in its entirety. The court found there was no triable issue of material fact regarding sexual harassment because the incidents Robinson described were not severe or pervasive. The court further found there was no evidence of gender discrimination and that Robinson had failed to support her gender discrimination claim with legal argument; Robinson could not establish the County had taken any adverse employment action against her, thus her claims for gender and disability discrimination and retaliation necessarily failed. As to the disability claims, the court additionally found Robinson could not perform her basic job requirements, and the claims asserting a failure to accommodate and to engage in the interactive process failed because the County had the right to determine if Robinson could be accommodated. The court concluded the undisputed evidence established that Robinson failed to return to work and thereby ended the interactive process herself. Finally, the court

7

determined Robinson's remaining claims were derivative of the discrimination and harassment claims and therefore also failed.

Robinson timely appealed from the judgment.

## DISCUSSION

### I.     Standard of Review

Summary judgment is appropriate if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 (*Aguilar*).)  If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact based on specific facts.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.)

"There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)  "In determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence

8

if contradicted by other inferences or evidence that raise a triable issue as to any material fact."  (Code Civ. Proc., § 437c, subd. (c).)

" ' "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' [Citation.]"  (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)  We apply the same standard in reviewing an order granting summary adjudication.  (*Mireskandari v. Edwards Wildman Palmer LLP* (2022) 77 Cal.App.5th 247, 256–257.)

In the employment discrimination context, the employee's "subjective beliefs . . . do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations."  (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433 (*King*); accord *Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1159 (*Featherstone*).)

## II.  The Trial Court Properly Granted Summary Adjudication of Robinson's Sexual Harassment and Gender Discrimination Claims

### A.  Hostile work environment

Under the FEHA, an employer is prohibited from harassing an employee because of sex or gender.  (§ 12940, subd. (j)(1).) Unlike discrimination claims, "harassment often does not involve any official exercise of delegated power on behalf of the employer," but rather "focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee."  (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706.)

To prevail on her sexual harassment claim based on a hostile work environment, Robinson must show: "(1) she is a

9

member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) defendants are liable for the harassment." (*Ortiz v. Dameron Hospital Assn.* (2019) 37 Cal.App.5th 568, 581 (*Ortiz*).) Actionable conduct must be " 'severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees.' " (*Id.* at p. 582; accord *Alexander v. Community Hospital of Long Beach* (2020) 46 Cal.App.5th 238, 262.)

The conduct must be more than "annoying or 'merely offensive' comments," and it cannot be "occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature." (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 283 (*Lyle*).) "[W]e consider several factors, including ' "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." ' [Citation.]" (*Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 940 (*Cornell*).)

Whether the harassment is sufficiently severe or pervasive to create a hostile work environment "must be assessed from the 'perspective of a reasonable person belonging to [the same protected class as] the plaintiff.' [Citation.]" (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 264 (*Nazir*).) In addition, an employee must "subjectively" perceive the work environment to be hostile. (*Ortiz, supra,* 37 Cal.App.5th at

10

p. 583.)  In other words, a plaintiff must show that the
" ' "conduct would have interfered with a reasonable employee's
work performance and would have seriously affected the
psychological well-being of a reasonable employee *and* that [she]
was actually offended." [Citation.]' [Citation.]"  (*Ibid.*, italics
added.)  In *Lyle*, the California Supreme Court explained that
conduct interferes with an employee's work performance if it
results in the loss of a concrete job benefit or if the plaintiff
satisfies the " ' "commensurately higher showing" ' " that the
conduct " ' "was pervasive and destructive of the working
environment." ' [Citations.]"  (*Lyle, supra,* 38 Cal.4th at p. 284.)

Effective January 1, 2019, the Legislature amended the
FEHA to clarify that, among other things, "[a] single incident of
harassing conduct is sufficient to create a triable issue regarding
the existence of a hostile work environment if the harassing
conduct has unreasonably interfered with the plaintiff's work
performance or created an intimidating, hostile, or offensive
working environment."  (§ 12923, subd. (b).)

Section 12923, subdivision (a) also states: "[H]arassment
creates a hostile, offensive, oppressive, or intimidating work
environment and deprives victims of their statutory right to work
in a place free of discrimination when the harassing conduct
sufficiently offends, humiliates, distresses, or intrudes upon its
victim, so as to disrupt the victim's emotional tranquility in the
workplace, affect the victim's ability to perform the job as usual,
or otherwise interfere with and undermine the victim's personal
sense of well-being.  In this regard, the Legislature affirms its
approval of the standard set forth by Justice Ruth Bader
Ginsburg in her concurrence in *Harris v. Forklift Systems* (1993)
510 U.S. 17 that in a workplace harassment suit 'the plaintiff

11

need not prove that his or her tangible productivity has declined as a result of the harassment. It suffices to prove that a reasonable person subjected to the discriminatory conduct would find, as the plaintiff did, that the harassment so altered working conditions as to make it more difficult to do the job.' [Citation.]"

The parties dispute whether section 12923 applies retroactively to the conduct in this case, which occurred in 2018. We need not decide this issue. Even considering the text of section 12923, which still requires "severe or pervasive" conduct (§ 12923, subd. (b)), summary adjudication was warranted.

Robinson alleged only two incidents and one type of conduct in support of her hostile work environment claim. First, at a staff appreciation event, McCambridge hugged Robinson instead of shaking her hand as he did with two male employees. Second, McCambridge told Robinson to stay off "porn" sites, making Robinson uncomfortable and appearing to flirt with her. Third, McCambridge frequently stared at Robinson in a sexual manner.

Taken together and liberally construed in Robinson's favor, this evidence is insufficient for a reasonable factfinder to conclude Robinson's workplace was " 'permeated with discriminatory intimidation, ridicule, and insult that [was] " 'sufficiently severe or pervasive to alter the conditions of [Robinson's] employment and create an abusive working environment.' " ' [Citations.]" (*Nazir*, *supra*, 178 Cal.App.4th at p. 263.) There was no evidence that McCambridge's hug was unduly prolonged, sexualized, intimidating, threatening, or demeaning, or that McCambridge touched Robinson on any other occasion. (Cf. *Zetwick v. County of Yolo* (9th Cir. 2017) 850 F.3d 436, 438–439, 444 [holding that a reasonable juror could find conduct severe under the FEHA where there were unwelcome

12

hugs on more than 100 occasions, and at least one unwelcome kiss].)

Similarly, McCambridge's pornography admonition was not "explicitly derogatory or threatening" to Robinson. (*Cornell*, *supra*, 18 Cal.App.5th at p. 940.) Further, a sole derogatory comment does not create a triable issue of fact. (*Ibid*. ["Four comments over several months does not establish a pattern of routine harassment . . . particularly given that the comments were not extreme"].) Aside from Robinson's subjective and uncorroborated statement that she felt the pornography comment was flirtatious, there is no basis to infer that the comment was motivated by a gender-based discriminatory intent. (*Pantoja v. Anton* (2011) 198 Cal.App.4th 87, 131–132.) The "FEHA is 'not a "civility code" and [is] not designed to rid the workplace of vulgarity.' [Citations.]" (*Lyle*, *supra*, 38 Cal.4th at p. 295.) It "does not outlaw . . . language or conduct that merely offends." (*Ibid*.)

That Robinson alleges McCambridge stared at her in a sexual manner does not alter the analysis. Staring that is the manifestation of unwanted sexual advances, or of sex-based animus, may constitute actionable sexual harassment under the FEHA when considered along with other harassing conduct. Yet, Robinson proffered no evidence from which a reasonable factfinder could infer the staring was related to her gender.

*Birschtein v. New United Motor Manufacturing, Inc.* (2001) 92 Cal.App.4th 994 (*Birschtein*) provides an instructive contrast. In *Birschtein*, a co-worker asked the plaintiff on dates three or four times, told her he wanted to " 'eat her,' " and described his sexual fantasies about her in detail. (*Id*. at pp. 997–998.) When the plaintiff rejected his advances and complained to

13

management, the co-worker began a "campaign of staring" at the plaintiff. (*Id*. at p. 998.) He drove past her workstation five to 10 times a day and stared directly at her for several seconds each time. (*Ibid*.) After the plaintiff complained, the co-worker reduced the staring incidents to two or three times a day; once he drove past the plaintiff's workstation and stared at her while grabbing his crotch. (*Id*. at pp. 998–999.)

The *Birschtein* court concluded this evidence was sufficient to withstand summary adjudication of the plaintiff's sexual harassment claim. As the court explained, "[w]hat began as [the co-worker's] overt acts of sexual harassment (asking for dates, the 'eat you' remarks, his specifically sexual bathing fantasies) were later transmuted by plaintiff's reaction . . . into an allegedly daily series of *retaliatory* acts—the prolonged campaign of staring at plaintiff—acts that were directly related to, indeed assertedly *grew out of*, the antecedent unlawful harassment." (*Birschtein, supra*, 92 Cal.App.4th at p. 1002.)

Here, there was no evidence the conduct was severe or pervasive, aside from Robinson's conclusory statements that the staring was "frequent" and "all the time." The evidence did not indicate that McCambridge sought Robinson out to stare at her, as was the case in *Birschtein*, and there is no evidence as to the duration of the staring. (*King, supra*, 152 Cal.App.4th at p. 433 ["subjective beliefs" do not create a triable issue of fact].) In contrast to *Birschtein*, there is no evidence the staring here was accompanied by descriptions of sexual fantasies or sexual interest. (*Birschtein, supra*, 92 Cal.App.4th at pp. 997–998.) The evidence also created no inference that the staring was retaliatory conduct arising out of unlawful harassment. Indeed, the evidence failed to suggest that sexual advances, sex-based

14

animus, or any motivation related to gender were the reasons for the staring.

Under California law, "when the harassing conduct is not severe in the extreme, more than a few isolated incidents must have occurred to prove a claim based on working conditions." (*Lyle*, *supra*, 18 Cal.App.5th at p. 284.)  Here, there is specific evidence only of the pornography comment and the hugging incident, and non-specific evidence of McCambridge staring at Robinson.  Robinson's declaration and testimony indicated McCambridge's behavior upset her and made her uncomfortable when it occurred, but she offered no evidence that the behavior made it more difficult for her to do her job.  Even considered together and liberally construed in Robinson's favor, this evidence fails to provide a basis for a reasonable factfinder to conclude McCambridge's conduct interfered with Robinson's work performance or altered her working conditions.  The County met its burden of showing Robinson was not subjected to sufficiently severe or pervasive conduct and Robinson did not counter by showing a triable issue of material fact.  Summary adjudication was proper.

### B.    Gender discrimination

The FEHA prohibits an employer from terminating an employee based on gender.  (§ 12940, subd. (a).)  To establish a prima facie case of discrimination under the FEHA, a plaintiff must show he or she was (1) a member of a protected class; (2) qualified for the position or was performing competently in the position he or she held; (3) suffered an adverse employment action, such as termination; and (4) some other circumstance suggested discriminatory motive.  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355 (*Guz*).)

"Once a plaintiff establishes a prima face case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action.  If the employer produces a legitimate reason for the adverse employment action . . . the burden shifts back to the employee to prove intentional retaliation or discrimination.  This is the three-part burden shifting analysis of *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802–805 . . . adopted by California for use in FEHA cases. [Citations.]"  (*Khoiny v. Dignity Health* (2022) 76 Cal.App.5th 390, 397–398.)  When the burden is shifted back to the plaintiff, he or she must present evidence that the employer's decision was motivated by prohibited discrimination.  (*Guz*, *supra*, 24 Cal.4th at pp. 353, 357; *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 377 ["A plaintiff's burden is . . . to produce evidence that, taken as a whole, permits a rational inference that intentional discrimination was a substantial motivating factor in the employer's actions toward the plaintiff"].)

Robinson asserts that McCambridge's involvement in the decision to discharge her is enough to create an inference that her termination was based on gender discrimination.  She relies on *DeJung v. Superior Court* (2008) 169 Cal.App.4th 533 (*DeJung*).  In *DeJung*, the plaintiff, a part-time court commissioner, sought a full-time position.  The presiding justice of the superior court, who was on the court's executive committee, told the plaintiff that the committee wanted someone younger.  (*Id*. at p. 540.)  The plaintiff nonetheless applied for a full-time commissioner job and was passed over for a younger applicant.  (*Id*. at p. 542.)  The *DeJung* court concluded that under the " 'cat's paw' " doctrine, the plaintiff was not required to show that every individual who

16

participated in the hiring decision shared a discriminatory animus in order to defeat summary judgment. "[S]howing that a significant participant in an employment decision exhibited discriminatory animus is enough to raise an inference that the employment decision itself was discriminatory, even absent evidence that others in the process harbored such animus." (*Id.* at p. 551.)

While it is undisputed McCambridge participated in the interactive process meeting, there is no evidence that he was motivated to terminate Robinson because of her gender. Rather, there is undisputed evidence that McCambridge wanted to keep Robinson on staff. In Welch's email to her supervisor about Robinson's interactive process meeting, she wrote that McCambridge said he "hated to lose the resource," and he wanted to try to find Robinson a different position.

Robinson suggests McCambridge demonstrated sex or gender-based animus when he engaged in the conduct she alleges was evidence of sexual harassment. Yet, as explained above, even viewing this evidence in the light most favorable to Robinson as the non-moving party, it fails to create a reasonable inference that McCambridge harbored a discriminatory animus toward Robinson because of her gender that would have tainted the termination decision. Without more, the subjective, conclusory statements in Robinson's declaration do not create a triable issue of fact. (*King, supra*, 152 Cal.App.4th at p. 433; cf. *Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1099–1101 [finding evidence that termination was motivated by sex discrimination based on comment that plaintiff had " 'checked out' " when she was pregnant, and overall attitude towards

17

retention of plaintiff was negative, along with evidence that manager's explanation for discharge was untrue].)

In addition, there is undisputed evidence that if Robinson was terminated at the interactive process meeting, it was because Wyatt and McCambridge concluded she could not perform her job in compliance with her medical restrictions. While Robinson contends this was evidence of unlawful disability discrimination, she has not presented any evidence that the explanation was also a pretext for gender discrimination. (*Guz*, *supra*, 24 Cal.4th at pp. 353, 357.)

The trial court properly granted summary adjudication of Robinson's claim for gender discrimination.

## III. There Are Triable Issues of Material Fact as to Robinson's Disability-Related Claims

### A. Disability discrimination

Under the FEHA, to prevail on a discriminatory discharge claim under section 12940, subdivision (a) based on physical disability, an employee is required to show he or she (1) suffered from a disability, (2) could perform the essential duties of the job with or without reasonable accommodation, and (3) suffered an adverse employment action because of the disability or perceived disability. (*Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 37–38; *Lui v. City and County of San Francisco* (2012) 211 Cal.App.4th 962, 970–971 (*Lui*).) Section 12940, subdivision (a)(1) "does not prohibit an employer from . . . discharging an employee with a . . . disability . . . if the employee, because of a physical or mental disability, is unable to perform the employee's essential duties even with reasonable accommodations . . . ."

The County does not dispute that Robinson can establish that she suffers from a disability.  Our analysis thus turns on the second and third elements: whether Robinson suffered an adverse employment action, and whether the County has presented evidence Robinson could not perform the essential elements of her position with or without a reasonable accommodation.  For the reasons below, we find Robinson established triable issues of material fact as to both elements.

### i.  Adverse employment action

The County argues Robinson cannot show there was an adverse employment action because she resigned.  As described above, the County provided evidence in the form of testimony from McCambridge, Wyatt, and Welch that the County did not terminate Robinson's employment at the interactive process meeting and, instead, the supervisors told her they would look for "other tasks" for her and to return the next day.  The County's evidence indicated it was Robinson who then declined to return to work, asserting she would be subjected to a "hostile environment" if she returned.  This evidence supported the County's burden as the moving party to establish Robinson cannot show an essential element of her claim: that she suffered an adverse employment action.  (*Cornell*, *supra*, 18 Cal.App.5th at p. 926.)

However, Robinson proffered evidence from which a reasonable fact finder could conclude she was terminated.  (*Cornell*, *supra*, 18 Cal.App.5th at p. 926.)  Robinson testified that at the end of the interactive process meeting, Welch told her there was no work for her and she should clean out her desk and pack her things.  Robinson also testified that Wyatt called her two days later to tell her: " 'Because you're fired, if you want your check, you need to bring your badge, and you need to bring your

19

keys in order to get your check.' " Robinson's declaration states that during the interactive process meeting, no one told her they would try to find her another position.

While Robinson's subjective beliefs and self-serving statements alone may not create a triable issue of fact (*King*, *supra*, 152 Cal.App.4th at p. 433), she supported her statements with a significant piece of evidence, a statement from the human resources representative. Welch's June 2018 email to her supervisor indicated that at the interactive process meeting, "[Wyatt and McCambridge] confirmed there were no assignments that would accommodate [Robinson's] work restrictions *and as the HR Rep. I informed the* [*employee*] *of the release*."[5] Erin Campos, another County human resources employee, testified that "release" and "termination" both mean end of employment. While the e-mail indicated that even after the meeting McCambridge wanted to find work for Robinson, Welch did not refer to or describe any efforts to search for a different position after the meeting concluded.

---

[5] Welch later testified at a deposition that she did *not* tell Robinson she was being released, indicating the contrary line in the e-mail was a mistake or a misinterpretation. Yet, when asked again whether she wrote the line in the e-mail, Welch testified: "That is what I informed the employee. If we are unable to find a location to accommodate her, then that would most likely be what would happen. She would be released, but we never got to that point . . . . Like I said, we would have to get back to her." This testimony was contradictory, unclear, and did not conclusively invalidate the inference that may otherwise be drawn from the e-mail that Welch in fact told Robinson during the meeting that the County was terminating her employment.

Drawing all reasonable inferences in Robinson's favor as we must (*Aguilar*, *supra*, 25 Cal.4th at p. 843), and "liberally construing her evidentiary submission while strictly scrutinizing [the County's] own showing" (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768), we conclude there is a triable issue of fact as to whether Robinson was terminated during the May 29 interactive process meeting. We may not weigh the evidence or inferences. (*Aguilar*, at p. 856.) A defendant's motion for summary judgment cannot be granted if the inferences that arise from the defendant's evidence—here, that Robinson was not terminated, but was asked to return the next day—are " 'contradicted by other inferences or evidence, which raise a triable issue as to any material fact.' (Code Civ. Proc., § 437c, subd. (c).)" (*Ibid*.) The County's evidence that Robinson resigned is contradicted by Welch's statement in her email that she informed Robinson of "the release" at the interactive process meeting, in addition to Robinson's testimony. Robinson has therefore set forth "specific facts" showing a triable issue as to whether she suffered an adverse employment action. (Code Civ. Proc., § 437c, subd. (p)(2).)

### ii. Ability to perform the essential duties of her job

"To prevail on summary adjudication of [a] section 12940(a) claim, [the County] must show there is no triable issue of fact about [Robinson's] ability, with or without accommodation, to perform the essential functions" of her position or another available, vacant position. (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 963.)

Section 12926, subdivision (f) defines "essential functions" as "the fundamental job duties of the employment position the

21

individual with a disability holds or desires.  'Essential functions' does not include the marginal functions of the position." (§ 12926, subd. (f).)  Evidence of whether a particular function is essential includes the employer's judgment of what functions are essential, written job descriptions, the amount of time spent on the job performing the specific function, and the past experiences of others in the same job.  (§ 12926, subd. (f)(2)(A)–(C), (F).)

The County's evidence was sufficient to establish that at least one of the essential functions of Robinson's position was data entry, which would require the use of a computer.  The letter from Robinson's doctor stated she could not work at a "computer screen longer than 30 minutes an hour," thus impacting her ability to perform that essential function.  Yet, the County failed to offer any argument in the summary judgment motion, or any evidence, to establish that Robinson could not perform this essential function *with accommodation*.  On this basis alone, the County failed to demonstrate its entitlement to summary adjudication of the disability discrimination claim.

Further, both the County's and Robinson's evidence demonstrated a triable issue of material fact as to whether Robinson could perform the essential functions of her position with accommodation.  Wyatt testified that data entry was not Robinson's only job responsibility.  She also made copies, answered phones, and took on other unspecified tasks as the office required.  Wyatt further testified that past student professional workers had engaged in clerical work and data entry, as well as "whatever the office needed . . . .  We found things geared to whatever they can do."  Robinson similarly offered evidence that her duties included indexing client records,

filing with the clerk's office, helping clients with their cases, "assist[ing] the public walk-in," and "research."

Human resources employee Welch testified that based on the information she received about Robinson's duties from the Long Beach office staff, Robinson could not do her current job with her medical restrictions. Welch indicated that according to Wyatt, it was impossible for Robinson to use a computer for only 30 minutes "and then go and do something else." However, Welch's opinion was based solely on Wyatt's conclusion that there was no work Robinson could do in compliance with her medical restrictions. Welch did not ask Wyatt or McCambridge for Robinson's specific duties. Welch did not know if Robinson had duties that did not require the use of a computer. Welch also testified that after Robinson left the meeting, Welch stayed on the call with Wyatt and McCambridge because they "didn't want to lose [Robinson]. You know, she was providing – *she was performing all job functions,* and it's hard to find employees, you know, that can come in and do the work."

The County proffered no evidence setting forth how much of each day or hour Robinson devoted to the various tasks she had already been assigned. The only evidence that Robinson was required to spend more than 30 minutes each hour using a computer, or that she could not alternate computer tasks with other duties each hour as a reasonable accommodation, was Welch's testimony that this is what Wyatt had indicated to her. Yet, the County did not offer testimony from Wyatt to this effect. Indeed, Wyatt's testimony that she had assigned past student professional workers tasks based on what they were capable of doing creates an inference that there was flexibility in the duties of the position. Further, Welch's testimony appeared to include

23

the observation that Robinson had already been performing all of the functions of the job. There were triable issues of material fact as to Robinson's ability to perform the essential functions of the position with reasonable accommodation.

### B. Failure to accommodate claim

Under the FEHA, it is an unlawful employment practice for an employer "to fail to make reasonable accommodation for the known physical or mental disability of an . . . employee" unless the accommodation would cause "undue hardship" to the employer. (§ 12940, subd. (m)(1); see *Green v. State of California* (2007) 42 Cal.4th 254, 262 (*Green*).) "A 'reasonable accommodation' means a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired. [Citation.]" (*Brown v. Los Angeles Unified School District* (2021) 60 Cal.App.5th 1092, 1107.)

To prevail on a failure to accommodate claim, a plaintiff must show "(1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability." (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1009–1010 (*Scotch*).) "[T]he plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation." (*Green, supra,* 42 Cal.4th at p. 262; *Lui, supra,* 211 Cal.App.4th at p. 971.)

In its summary judgment motion, the County argued Robinson could not show she was able to perform the essential duties of her position. As with the unlawful termination claim, the County failed to address Robinson's ability to perform the

24

job's essential functions *with reasonable accommodation*, and failed to show there is no triable issue of material fact regarding the availability of a reasonable accommodation.  While the County argued Robinson's resignation prevented the County from determining whether it could accommodate her, Robinson has shown there is a triable issue of material fact as to whether she was terminated.  The County did not establish it was entitled to summary adjudication of the failure to accommodate claim.

### C. Interactive process claim

Section 12940, subdivision (n), makes it unlawful for an "employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition."  "[I]n order to succeed on a cause of action for failure to engage in an interactive process, 'an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred.' [Citations.]"  (*Shirvanyan v. Los Angeles Community College Dist.* (2020) 59 Cal.App.5th 82, 96; *Scotch, supra*, 173 Cal.App.4th at p. 1018.)  The "FEHA requires an informal process with the employee to attempt to identify reasonable accommodations, not necessarily ritualized discussions." (*Nealy v. Santa Monica* (2015) 234 Cal.App.4th 359, 379.)

Robinson's specific request during the interactive process meeting was to continue to do her current job.  She argues she was assigned a diversity of tasks that did not require her to sit at a computer.  She contends completing those tasks, and taking

25

breaks to stretch each hour, enabled her to perform the job in compliance with her medical restrictions. The County's evidence did not establish that during the interactive process meeting it meaningfully considered whether Robinson's essential duties were all computer tasks, or whether they were tasks that required continuous computer use for more than 30 minutes each hour. Indeed, Welch's e-mail suggested that she, Wyatt, and McCambridge had already concluded the County could not accommodate Robinson's restrictions before they even met with her. (*Kaur v. Foster Poultry Farms LLC* (2022) 83 Cal.App.5th 320, 347 (*Kaur*) [employer has continuous obligation to engage in interactive process in good faith].)

The County further asserts it was Robinson who curtailed the interactive process by failing to return to work. (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 54 ["if the process fails, responsibility for the failure rests with the party who failed to participate in good faith"].) However, as detailed above, there is a triable issue of fact as to whether Robinson was terminated at the interactive process meeting, without the County inquiring about opportunities for her at other offices of the County Public Defender. (*Kaur*, *supra*, 83 Cal.App.5th at p. 346 [if an employee cannot be accommodated in the current position, then the employer has " ' " 'a *duty* to reassign a disabled employee if an already funded, vacant position at the same level exists' " ' "].) " '[T]he fact that an employer *took some steps to work with an employee* to identify reasonable accommodations does not absolve the employer of liability . . . . If the employer is responsible for a later breakdown in the process, it may be held liable.' [Citations.]" (*Id.* at p. 348.)

26

Viewing the evidence in the light most favorable to Robinson, there are triable issues of material fact as to whether the County engaged in the interactive process in good faith.

## IV. There Is a Triable Issue of Fact as to Robinson's Retaliation Claim

"[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042; § 12940, subd. (h).)

In her complaint, Robinson alleged she engaged in protected activity when she requested a reasonable accommodation and complained of sexual harassment.[6] On appeal, she argues only that the County retaliated against her for requesting that her "disability be accommodated" when she presented the doctor's letter. Requesting an accommodation is a protected activity under the FEHA. (§ 12940, subd. (m)(2); *Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 246.)

The County sought summary adjudication of Robinson's retaliation claim solely based on the arguments that Robinson did not suffer an adverse employment action, and that any adverse employment action was not discriminatory but was based on the legitimate business reason that she could not perform the

---

[6] There is no evidence that Robinson complained of sexual harassment while employed by the County. Her first complaint related to sexual harassment was the letter she sent to the County Board of Supervisors on May 31, 2018.

27

essential duties of her position. The County reasserts the same arguments on appeal. As discussed above, we conclude Robinson demonstrated triable issues of fact on both issues. The County did not establish it was entitled to summary adjudication of the retaliation claim.

## V. The County Is Not Entitled to Summary Adjudication on Robinson's Claim for Failure to Prevent Discrimination

Finally, Robinson asserts the County violated section 12940, subdivision (k), which makes it unlawful "[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." She bases this claim on her sexual harassment, gender discrimination, disability discrimination, and retaliation claims.

A claim under section 12940, subdivision (k) has three elements: (1) the plaintiff was subjected to discrimination, retaliation, or harassment; (2) the defendant failed to take all reasonable steps to prevent it; and (3) this failure caused plaintiff to suffer injury, damage, loss or harm. (*Caldera v. Department of Corrections and Rehabilitation* (2018) 25 Cal.App.5th 31, 43–44 (*Caldera*).) "An actionable claim under section 12940, subdivision (k) is dependent on a claim of actual discrimination: 'Employers should not be held liable to employees for failure to take necessary steps to prevent such conduct, except where the actions took place and were not prevented.' [Citation.]" (*Scotch, supra,* 173 Cal.App.4th at p. 1021.) In other words, when a plaintiff cannot establish a violation of the FEHA based on certain conduct, the employer as a matter of law cannot be held responsible for failing to prevent that conduct under section 12940, subdivision (k). (*Featherstone, supra,* 10

28

Cal.App.5th at p. 1166.) Robinson's sexual harassment and gender discrimination claims fail, so summary adjudication of the derivative section 12940, subdivision (k) claims was also proper.[7] (*Ibid*.) Only her disability-related and retaliation claims remain for our analysis.[8]

The County failed to show Robinson cannot establish an element of the claim for failure to prevent disability-related discrimination and retaliation. While the County presented undisputed evidence of its anti-discrimination policy, Robinson has raised triable issues of material fact regarding whether such discrimination nonetheless occurred. A factfinder could reasonably determine that the steps the County took to prevent discrimination and retaliation were thus ineffective. (*Caldera, supra*, 25 Cal.App.5th at p. 44 [summary judgment not warranted where despite evidence of anti-harassment training supervisor continued to harass plaintiff].) The County was not entitled to summary adjudication of the failure to prevent claim.

---

[7] Similarly, to the extent Robinson's seventh cause of action is based on a claim of failure to investigate harassment pursuant to section 12940, subdivision (j), summary adjudication was proper.

[8] "[R]etaliation is a form of discrimination actionable under section 12940, subdivision (k)." (*Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1240, disapproved on other grounds in *Jones v. The Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1162.)

## DISPOSITION

The judgment is reversed.  The matter is remanded with directions that the trial court vacate its order granting Respondent's motion for summary judgment.  The court is to enter a new order granting summary adjudication of the claims for sexual harassment and gender discrimination, and denying summary adjudication of the claims for disability discrimination, failure to accommodate, failure to engage in the interactive process, retaliation, and failure to prevent discrimination based on disability and retaliation.  The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

LAVIN, Acting P. J.

EGERTON, J.

30